Melissa McGUIRE, Plaintiff,

v.

THE RYLAND GROUP,
INC., Defendant.

No. 605CV1421ORL22KRS.

United States District Court,
M.D. Florida,
Orlando Division.

June 20, 2007.

Carlos Raul Diez–Arguelles, Attorneys Trial Group, Orlando, FL, for Plaintiff.

Charles J. Cacciabeve, Christopher Mark Paolini, David E. Cannella, Jason A. Perkins, Keith J. Hesse, Carlton Fields, P.A., Orlando, FL, for Defendant.

### ORDER

CONWAY, District Judge.

## I. INTRODUCTION

This cause comes before the Court for consideration of Defendant's, Ryland Group, Inc., Motion for Summary Judgment (Doc. 57), filed January 26, 2007, to which Plaintiff, Melissa McGuire, has responded (Doc. 66). After carefully considering the matter, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion.

## II. BACKGROUND [1]

On September 22, 2003, Plaintiff signed an Agreement of Sale (the Contract) with

---

1. For the purposes of summary judgment, the Court accepts the Plaintiff's version of any

Defendant to purchase a new home, located at 12115 Southern Red Maple Drive, Orlando, Florida 32828, to be built by Defendant. Plaintiff paid Defendant $195,137.00 for the home. Doc. 69–2 at 1, the Contract. Plaintiff financed 100% of the sales price. Doc. 60–9 at 28, Pl. Dep. at 238.[2] The Contract included a limited home warranty. While Plaintiff's home was under construction, Plaintiff visited the home site at least every other day. Plaintiff's Dep. at 46–47.

When she visited the home site, Plaintiff noticed deficiencies in the construction of the home. She saw gaps between the concrete block walls, which were large enough to emit sunlight through the wall to the interior of the house. *Id.* at 47. Plaintiff also was concerned with gaps in the concrete underneath the windows. *Id.* at 55. Plaintiff discovered that Defendant had forgotten to build the front porch. *Id.* at 70. Additionally, Plaintiff raised concerns about the thickness of the stucco to Defendant's superintendent. *Id.* at 80. Plaintiff observed the stucco to be unevenly applied. *Id.* At some points it was so thin that she could see the concrete wall and soffits. *Id.* Plaintiff voiced all of her concerns with the construction of her home with Defendant's superintendent. *Id.* at 48, 70, 75, 80. Afraid that the superintendent was not taking her seriously, Plaintiff also raised her concerns with her realtor, Steve Gilmore, and a sales representative of Defendant, Lori Kaminski. *Id.* at 52. Plaintiff did not feel that her concerns were adequately addressed and attempted to rescind the Contract. *Id.* at 57. She relayed her fears to Kaminski, who told her that if she backed out of the Contract then she would lose her deposit of $2,500.

*Id.* at 56–57. In the end, Plaintiff went through with the purchase of the home. *Id.* at 55.

In April 2004, Plaintiff moved into her new home. In July 2004, Plaintiff first noticed water intrusion into her home. *Id.* at 110–11. At some point in late July or early August, Plaintiff contacted Defendant to inform Defendant of the water leaks. *Id.* Plaintiff states Defendant's employee, Steve Thorpe, told her not to worry about the leaks, that he would take care of it, but that he was very busy and could not address the issue right then. *Id.* Before the water intrusion was addressed, on August 13, 2004, Hurricane Charley, the first of three hurricanes in a six week period, hit Orlando. *Id.* at 118. On September 5, 2004, Hurricane Frances struck; twenty days later Hurricane Jeanne did the same. *Id.* at 121–28.

Plaintiff observed water intrusion during the hurricanes, which damaged, among other things, her carpet, drywall, and kitchen cabinets. *Id.* at 123. After each hurricane, Plaintiff contacted both FEMA to file a claim, *id.* at 232, 234, and her insurance company, Allstate, with which she filed a hurricane claim, *id.* at 197–98. She recovered $20,000 from her Allstate homeowner's insurance policy, which specifically excluded coverage of construction defects. *Id.* at 201–02.

Additionally, Plaintiff contacted Defendant to apprise it of the damage wrought by the hurricanes to her home. Doc. 57–38 at 19, Sabella dep. at 49. Defendant sent its Vice President of Operations, Joseph Sabella, to inspect Plaintiff's home. *Id.* Sabella concluded that Defendant was

---

factual discrepancies between the parties. *See Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 918 (11th Cir.1993). The Background section reflects this bias.

2. The exhibits of Plaintiff's deposition in evidence are difficult to follow. Defendant broke the deposition into eleven different sections in Document 60. Instead of referring to the different sections, the Court will cite to the internal pagination of the deposition.

responsible for some of the damage to Plaintiff's home, but the hurricanes were responsible for the majority of the damage. Sabella dep. at 72–73, 78–79, 88. Specifically, Sabella believed that Defendant should repair the leak in Plaintiff's garage. *Id.* at 72–73. Defendant cured the water leak in Plaintiff's garage. Doc. 57–24 at 3, Aff. of Brad Loring, Special Projects Manager for Orlando Division of Ryland, at ¶ 13. Defendant also addressed several problems with Plaintiff's home, which Defendant concluded were the result of the hurricanes and, therefore, not its responsibility. *Id.* Defendant's employees caulked cracks in the exterior of Plaintiff's home and re-painted each outside wall. *Id.* Defendant made preparations to perform further maintenance on the interior of Plaintiff's home. *Id.* However, Plaintiff stopped cooperating with Defendant because she disagreed with Defendant's protocol. *Id.*

Moreover, Plaintiff organized a protest rally against Defendant, she appeared on television and stated that Defendant would not help her fix the leaks in her new home, she passed out flyers to her neighbors about her home's problems, and at a home owner association meeting she advised her neighbors to retain legal counsel and independent home inspections. Pl. Dep. at 162, 164, 169–70, 195–96. Additionally, Plaintiff contacted both President Bush and Governor Bush regarding what she described to be lack of quality construction of her home. Doc. 57–41; doc. 57–42. Before Defendant could procure the repairs to the inside of Plaintiff's home she terminated communications with Defendant and refused to let Defendant's employees and subcontractors into her home. Aff. of Brad Loring at ¶ 14.

In November 2004, Plaintiff brought suit against Defendant. On September 27, 2005, the instant action was removed to this Court. Doc. 1. Plaintiff's complaint consists of four counts: (1) breach of express warranty, (2) breach of implied warranty, (3) violation of Florida Statute § 553.84, and (4) violation of Florida's unfair & deceptive trade practices laws (§ 501.201 et. seq.). Doc. 2 at 2–3. As a result of these alleged wrongdoings, Plaintiff seeks monetary relief for damages to: (a) the interior and exterior of her home, (b) personal property located within the home, (c) the depreciation and diminution in value of her home, (d) loss of use of her home, and (e) repair and remediation costs. *Id.* at 2.

In May 2006, Plaintiff refinanced the existing mortgage on her home and obtained a new loan from Wells Fargo for $294,300. Doc. 60–15 at 24, Wells Fargo Loan Agreement. Wells Fargo appraised the home at $354,000. Doc. 60–18 at 4, Appraisal of Plaintiff's Home. In the process of obtaining the new loan, she represented that she was not involved in a lawsuit. Doc. 60–20 at 3.

Defendant has moved for summary judgment on all of Plaintiff's counts. Defendant contends that there is no genuine issue of material fact on any of her claims for a jury to consider. Alternatively, Defendant asserts that its affirmative defenses preclude Plaintiff's causes of action as a matter of law.

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The party seeking summary judgment bears the initial burden of identifying for the district court those portions of the record 'which it believes demonstrate the absence

of a genuine issue of material fact.'" *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir.1996) (quoting *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1396, *modified on other grounds*, 30 F.3d 1347 (11th Cir.1994)). "There is no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Cohen*, 83 F.3d at 1349. The Court considers the evidence and all inferences drawn therefrom in the light most favorable to the non-moving party. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir.1993).

## IV. LEGAL ANALYSIS

Defendant first argues that it is not an insurance company and, therefore, not obligated to produce a failsafe product pursuant to Florida law. Additionally, Defendant claims that Plaintiff's actions are inconsistent: she collected $20,000 from an insurance policy with Allstate, expressly excluding construction defects, for hurricane damage and now she is suing Defendant for construction defects. Plaintiff does not contend that Defendant must indemnify her as an insurance company would. She claims that Defendant is liable for damages pursuant to both Defendant's express warranty and its implied warranty.

### A. Implied Warranty

■ Defendant argues Plaintiff's implied warranty claim is precluded by the Contract. Plaintiff claims that a buyer of a new home is protected against blanket waivers of implied warranty of habitability. Plaintiff contends that it is settled law that regardless of any express warranty in a real estate contract, a developer of a new residential home also implicitly warrants that the residence is merchantable and fit for its intended use. Plaintiff is correct in

that an express warranty does not automatically preclude an implied warranty. In Florida, there is an implied warranty of habitability included in the sale of a new home from a builder. *Hesson v. Walmsley Construction Co.*, 422 So.2d 943, 945 (Fla. 2nd DCA 1982). Furthermore, "Florida has a liberal policy of allowing litigants their day in court on suits involving breaches of implied warranty of fitness and merchantability." *Gable v. Silver*, 258 So.2d 11, 14 (Fla.App.1972).

■ However, the analysis does not end there. Parties can exclude items from an implied warranty of habitability through a disclaimer with clear and unambiguous language, which "clearly reflects both parties' expectations as to what items are not warranted." *Id.* at 946. A disclaimer must be "more than a mere statement of time limitation on an express warranty. It addition, an express repudiation or renunciation of any alternative form of warranty is required." *Rapallo South, Inc. v. Jack Taylor Development Corp.*, 375 So.2d 587, 588 (Fla. 4th DCA 1979).

■ In the instant case, the Contact goes a step further than just offering an express warranty; it specifically disclaims any implied warranty. The Contact states:

19. *HOME OWNERS WARRANTY:* We will register Your Home with the Your Ryland Home Warranty at the time of Your Settlement. At that time We will provide You with a warranty document detailing the coverage under Our warranty program. You agree to accept the Your Ryland Home Warranty as the only warranty from Us.

Doc. 69–2 at 4, Contract. Furthermore, the Contract states:

21. *NO OTHER AGREEMENTS:* We make no express or implied warranties to You except as required by law and as set forth in this Agreement of Sale and

on the Riders. There are no other oral or written agreements or representations, directly or indirectly, connected with this Agreement of Sale. *Id.* The HOME OWNERS WARRANTY section of the Contract refers to and incorporates the *Your Ryland Home* warranty, which is contained in the *Your Ryland Home* manual. The Home Warranty states:

> BUILDER MAKES NO HOUSING MERCHANT IMPLIED WARRANTY OR ANY OTHER WARRANTIES, EXPRESS OR IMPLIED, IN CONNECTION WITH THE AGREEMENT OF SALE OR THE WARRANTED HOME, AND ALL SUCH WARRANTIES ARE EXCLUDED, EXCEPT AS EXPRESSLY PROVIDED IN THIS LIMITED WARRANTY. THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE FACE OF THIS LIMITED WARRANTY.

Doc. 57–21 at 17, *Your Ryland Home* manual at IV–134 (emphasis in original). These disclaimers are general disclaimers of an implied warranty; they do not disclaim specific items. For instance, the disclaimers do not state that the parties agree that the buyer assumes the risk of any water intrusion at the exterior walls, but that buyer disclaims any right to an implied warranty. In order to be effective, the disclaimers must be clear and specific as to which items the buyer agrees were excluded. These disclaimers do not meet that standard. Therefore, Plaintiff's implied warranty claim may go forward.

**B. Express Warranty**

Defendant contends Plaintiff does not have a valid claim pursuant to the parties' express warranty. First, Defendant argues the 2004 hurricanes caused the damage to the home and, thus, the exclusion to the express warranty covering acts of God or nature precludes any recovery under the warranty. Doc. 57–22 at 11, *Your Ryland Home* manual at IV–158. Defendant argues at length describing how these hurricanes were the cause of the damage and how they were acts of nature. Defendant also notes Plaintiff contacted FEMA after each hurricane and filed a hurricane claim under her homeowner's insurance policy. Defendant submits that these actions constitute an admission that her damages were caused by the hurricanes.

■ Defendant's evidence is formidable on this point. However, Plaintiff is clear in her contention that the water intrusion began before the first hurricane. Pl. dep. at 110. Furthermore, Plaintiff is unequivocal in that before any hurricane she informed Defendant of the water leaks in her home and that Defendant told her not to worry that an agent of Defendant would come out and fix the leak. *Id.* at 110–11. When the water intrusion began and what caused it are questions of fact for the jury to decide.

■ Defendant also raises a failure to cooperate defense to the express warranty. Defendant asserts that even though it was not responsible for the damages to Plaintiff's home, it sent employees to the home to address the problems with the home and Plaintiff refused to let them enter the premise. Defendant points to the *Your Ryland Home* manual, which states:

> I. *RIGHT OF ACCESS*
>
> YOU MUST PROVIDE REASONABLE WEEKDAY ACCESS DURING NORMAL BUSINESS HOURS IN order for Us to perform Our obligations. If You fail to provide such access to Us, it may relieve Us of Our obligations under this Agreement.

Doc. 57–21 at 27, *Your Ryland Home* manual at IV–144 (emphasis in original). Defendant contends after Plaintiff filed her lawsuit, Plaintiff did not provide reasonably access and that Plaintiff's actions discharged Defendant of its duties arising from the express warranty.

Plaintiff responds by noting that she made her home available to Defendant for inspection. As noted, she requested Defendant go to her home to repair the water leaks before the hurricanes hit Orlando. Pl. dep. at 110. Plaintiff claims that she provided ample notice of her warranty claims and provided Defendant opportunities to cure the defects.

In her deposition, Plaintiff states that every time Defendant's agents wanted to go to her house they were allowed to do so. Doc. 60–10 at 3, Pl. dep. at 213. She states that the problem she had with Defendant is that she disagreed with its proposed remedy for fixing the defects in her home. *Id.* She believed Defendant's proposed solutions to the defects were unreasonable. As an example, she stated that Defendant offered to reface the cabinet doors when she had complained about water intrusion behind the cabinets. *Id.* at 3–4, Pl. dep. at 213–14. To be sure, if there truly was water intrusion behind the cabinets simply fixing the facade may be not a reasonable cure to the defect.[3] In any event, failure to cooperate is a factual defense left to the jury to decide.

## C. Building Code Claim

■ Plaintiff contends Defendant violated the Florida Building Code (FBC) by using Textured Cementitious Finish (TCF) on the exterior of her home instead of stucco. Florida Statute § 553.84 provides homeowners a private cause of action against homebuilders in the event that the homeowner is damaged by a FBC violation. In relevant part, the statute reads:

Notwithstanding any other remedies available, any person or party, ... damaged as a result of a violation of this part of the Florida Building Code, has a cause of action in any court of competent jurisdiction against the person or party who committed the violation; however, if the person or party obtains the required building permits and any local government or public agency with authority to enforce the Florida Building Code approves the plans, if the construction project passes all required inspections under the code, and if there is no personal injury or damage to property other than the property that is the subject of the permits, plans, and inspections, this section does not apply unless the person or party knew or should have known that the violation existed.

Fl. Stat. 553.84.

Defendant argues that there is no evidence of a FBC violation. Additionally, Defendant claims Plaintiff is precluded from recovering under this statute because (1) there are no allegations of personal injury, (2) there is no evidence of damage to personal property, and (3) there is no evidence that Defendant knew or should have known a violation existed. As preliminary matter, Defendant sought and received the required building permits and approval of the plan of Plaintiff's home by Orange County, Florida and the construction of Plaintiff's home passed all required inspections under the FBC. Doc. 57–24 at 2, Aff. of Brad Loring ¶¶ 5,6. Plaintiff does not contest this point nor has Plaintiff plead any personal injury. Thus, for Plaintiff to have a cause of action pursuant to this statute, she must demonstrate that Defendant knew or should have known that a violation of FBC existed.

---

**3.** The Court notes that Plaintiff's counsel failed to mention Plaintiff's reasoning for not allowing Defendant to enter her home in her memorandum in opposition to summary judgment. In response to Defendant's right to access argument, Plaintiff states that she provided Defendant notice of the defects. Notice is not enough; the warranty required her to provide access to cure the defects.

Plaintiff alleged numerous construction defects that Plaintiff claimed violated the FBC. The only asserted violation that Defendant specifically addresses is the TCF issue. Therefore, this Court is limited, for summary judgment purposes, to only analyzing the FBC as it pertains to the TCF issue. Stucco and TCF both consist of the same material: Portland cement based plaster. Stucco is regulated by the FBC to consist of three layers. On the other hand, the FBC does not have a standard for TCF.

■ Defendant asserts that TCF is not stucco and, therefore, not held to the FBC thickness requirements that apply to stucco. To buttress this contention, Defendant offers the affidavit of Robert Olin, the Division Manager of the Orange County Division of Building Safety in Orange County, Florida, for the proposition that use of TCF is not a violation of the FBC. Doc. 57–54 at 2, Aff. of Robert Olin ¶ 7. "When an agency with the authority to implement a statute construes the statute in a permissible way, that interpretation must be sustained even though another interpretation may be possible." *Edward J. Seibert, A.I.A. Architect and Planner, P.A. v. Bayport Beach & Tennis Club Ass'n,* 573 So.2d 889, 892 (Fla. 2d DCA 1990).

Plaintiff attempts to distinguish the instant case from *Seibert* by stating that when the building code inspector is clearly erroneous in his interpretation the plaintiff is allowed to introduce evidence to that effect. This is a correct statement of law. However, it is still Plaintiff's burden to come forward with evidence to show the building inspector was clearly erroneous. Plaintiff points to the expert report of Jeffery Hooper, which describes his opinions of code violations present in Plaintiff's home.

Plaintiff argues that a question of fact exists as to what TCF is. But the parties' briefs make clear that there is no dispute as to what TCF is: Defendant agrees with Plaintiff in that TCF is not stucco but that it is made from the same substance, Portland cement based plaster. It is Defendant's position, backed by Olin's affidavit, that, unlike stucco, TCF is a skim coat of Portland cement based plaster that is not required to meet the application and thickness requirements of stucco. Olin concludes that the application of TCF is consistent with the FBC.

Plaintiff contends whether or not TCF satisfies the FBC is a question for the jury. Defendant asserts that the building inspector found that the TCF used on Plaintiff's home did meet the FBC. Plaintiff has not submitted evidence that demonstrates that she could meet her heightened burden of showing that the building inspector was clearly erroneous. Merely submitting an affidavit of an expert stating that Defendant knew or should have known that its chosen veneer, TCF, violated the FBC and that Hooper's opinion that Olin clearly erred in finding TCF to meet the FBC is conclusory. Plaintiff has not supported Hooper's conclusions with evidence. This case is beyond the stage of allegations. Therefore, the Court grants summary judgment as to whether the application of TCF is a violation of the FBC. While Defendant's use of TCF is relevant to the warranty claim issues, Plaintiff shall not present evidence to the jury concerning whether TCF is an appropriate veneer pursuant to the FBC. Since Defendant did not specifically contest any of Plaintiff's other alleged FBC violations, Plaintiff may address those alleged violations to the jury. The clearly erroneous standard applies to the other alleged violations.

## D. Deceptive and Unfair Trade Practices Act Claim

■ Plaintiff claims that Defendant's use of TCF on the exterior of her

home instead of stucco violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). A deceptive practice is one that is likely to misled consumers. *Davis v. Powertel, Inc.*, 776 So.2d 971, 974 (Fla. 1st DCA 2000). A "claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2nd DCA 2006). Defendant asserts that Plaintiff's claim under FDUTPA fails for two reasons. First, Defendant contends it provided Plaintiff with an "Included Features" sheet, initialed by Plaintiff, which stated that Plaintiff's home would have TCF. Defendant furthermore claims that Plaintiff never asked any of Defendant's employees what TCF meant. Plaintiff directly contradicts Defendant's assertion, stating that during the negotiations with Defendant's employees regarding the design of her home she was advised that her home would have a stucco exterior. The Court need not bother with this issue because it finds Defendant's second reason dispositive.

■ Defendant's second reason as to why Plaintiff's FDUTPA claim fails is that she cannot make a prima facie showing of a FDUTPA claim because Plaintiff does not demonstrate that there were actual damages:

> [T]he measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. [ . . . ] A notable exception to the rule may exist when the product is rendered valueless as a result of the defect-then the purchase price is the appropriate measure of actual damages.

*Id.* at 869 (internal citations and quotations omitted). Plaintiff has not presented evidence that a house with TCF differs in value than one with stucco. All that Plaintiff offers is the reports of her experts Krantz and Hooper. But these reports do not give any estimate as to fair market value of her home.

Moreover, Defendant submits evidence of Plaintiff's refinanced mortgage to show that the home increased in value considerably since Plaintiff purchased it. When Plaintiff refinanced her home an appraiser valued it for $354,000. Even with the alleged defects in the home, in less than three years the house had appreciated to nearly twice the purchase price. The Court gives great weight to the mortgage documents, especially considering they were procured by Plaintiff independent of this litigation. Plaintiff's FDUTPA claim fails because she has not presented any competent evidence of the difference in the market value had the house had a stucco exterior versus the actual TCF exterior of Plaintiff's house.

### E. New Home Orientation Form Constituting Waiver

■ Defendant contends Plaintiff waived all of her claims, except the express warranty, when she signed a new home orientation. Doc. 57–49, Ryland Homes Orlando Division New Home Orientation. In the form, Plaintiff acknowledged that she inspected the home and found it to be in good condition. Defendant claims this form releases it from all of Plaintiff's claims except the express warranty. The major defects Plaintiff alleges, like the water intrusion, were latent defects, which she could not have seen during a cursory walk through of her home. This form does not preclude Plaintiff's claims under the FBC.

### F. Avoidable Circumstances and Plaintiff's Failure to Mitigate

■ Defendant argues Plaintiff's claims are barred because of both the doc-

**1356**

trine of avoidable consequences and her failure to mitigate damages by refusing to allow Defendant access to premise. As Defendant notes the party seeking damages cannot recover any damages, which could have been avoided through reasonable care. *Air Caledonie Int'l v. AAR Parts Trading, Inc.,* 315 F.Supp.2d 1319, 1337 (S.D.Fla.2004). Defendant does not distinguish the factual basis for this argument opposed to the basis for the right to access argument for the express warranty. Again, through Plaintiff's deposition, she has offered enough evidence that she exercised reasonable care in not allowing Defendant to perform repairs she believed to be inadequate to solve the defects. These are questions of fact for a jury to decide.

### V. CONCLUSION

Based on the foregoing, it is **ORDERED** as follows:

1. Defendant's, Ryland Group, Inc., Motion for Summary Judgment (Doc. 57), filed January 26, 2007, is **DENIED IN PART** and **GRANTED IN PART**.

a. Defendant's motion is **GRANTED** to the extent that it seeks summary judgment on the issues of Plaintiff's claim that TCF is a violation of the Florida Building Code and Plaintiff's claim arising from Florida Deceptive and Unfair Trade Practices Act.

b. Defendant's motion is **DENIED** in all other aspects.

2. This case is set for trial date certain on July 23rd, 2007 at 9:00 a.m. 6th Floor Courtroom # 2.