SOVEREIGN MILITARY HOSPITALLER ORDER OF SAINT JOHN OF JERUSALEM OF RHODES AND OF MALTA, Plaintiff,

v.

The FLORIDA PRIORY OF KNIGHTS HOSPITALLERS OF the SOVEREIGN ORDER OF ST. JOHN OF JERUSALEM, KNIGHTS OF MALTA, The ECUMENICAL ORDER, Defendant.

Case No. 09–81008–CIV.

United States District Court, S.D. Florida.

Sept. 29, 2011.

Jose Felix Diaz, Luis Miguel O'Naghten, Akerman Senterfitt, Miami, FL, Michael K. Grace, Grace & Grace LLP, Los Angeles, CA, for Plaintiff.

Joseph Rodman Steele, Jr., Duane Morris LLP, Boca Raton, FL, Brian W. Toth, Holland & Knight, Miami, FL, Matthew Zvi Zimmerman, Holland & Knight, West Palm Beach, FL, Thomas W. Brooke, Holland & Knight LLP, Washington, DC, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

KENNETH L. RYSKAMP, District Judge.

THE COURT conducted a bench trial of this matter from February 28, 2011–March 2, 2011 and issues the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

### A. Introduction

Plaintiff, the Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes and of Malta ("SMOM") is a Catholic, non-profit international organization with associations in over 45 countries, including several in the United States. Defendant, The Florida Priory of Knights Hospitallers of the Sovereign Order of St. John of Jerusalem, Knights of Malta, the Ecumenical Order ("Florida Priory"), an ecumenical Christian organization, is associated with an international ecumenical association known as Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, the Ecumenical Order ("Ecumenical Order"). The Florida Priory is a Florida non-profit corporation located in West Palm Beach, Florida.

SMOM brings this action for trademark infringement, false advertising, unfair competition and deceptive trade practices, alleging that the Florida Priory falsely represents itself as having a connection with SMOM. SMOM claims that the Florida Priory's use of certain names and use of a certain unregistered trademark is likely to cause confusion among consumers. The Florida Priory challenges the basis under which SMOM obtained several of SMOM's federal trademark registrations and seeks their cancellation. The Florida Priory also

questions whether SMOM's names and unregistered symbol are protectable as registered or unregistered trademarks.

### B. SMOM and the Florida Priory's Shared History

SMOM and the Florida Priory each trace their histories to the late eleventh century, when a lay religious Order [1] was founded in Jerusalem to run a hospice for Christian pilgrims. Pope Paschal II issued a Bull in 1133 that placed the hospice under the aegis of the Catholic Church. The Order performed both charitable and militaristic functions, offering care for pilgrims, the sick and the needy and undertaking the military defense of Christian territories. The Order went by several names, including "Knights Hospitaller," which connoted the Order's military and charitable missions, the "Knights of St. John," after St. John the Baptist, the Order's patron saint, and the "Knights of Jerusalem," after the location of the Order's founding. The St. John of Acre monastery, the last foothold of Christianity in the Holy Land, fell in 1291, forcing the Order to move to Cyprus. The Order took possession of Rhodes in 1310 and began calling itself the "Knights of Rhodes." It amassed a powerful navy and saw numerous military victories, but eventually surrendered to Sultan Suliman the Magnificent on January 1, 1523. The Order was without territory until 1530, when Roman Emperor Charles V granted it the islands of Malta, Gozo and Comino and the city of Tripoli. The Order has since been known as the "Knights of Malta." Napoleon drove the Order from Malta in 1798, after which the knights scattered, with some returning to their homelands and others relocating to Russia. The Order subse-

---

1. The histories of SMOM and the Florida Priory do not diverge until 1798. Accordingly, the Court refers to both parties as "the

Order" with regard to events occurring prior to 1798.

quently ceased all military functions and focused exclusively on charitable work.[2]

## C. SMOM's History and Trademark Registrations

Czar Paul I of Russia allowed the establishment of a Catholic Order in Russia. (Vann Trscpt., 393.) SMOM claims this Order as its predecessor. The Czar, who was Russian Orthodox, also created a non-Catholic Order, making himself Grand Master thereof. (*Id.*, 390; Papanicolau Trscpt., 551.) The Florida Priory claims this Order as its predecessor. SMOM disputes that Czar Paul I was a legitimate Grand Master because the Pope never confirmed the Czar as such. (Vann Trscpt., 390.) SMOM also objects to the Czar's position as Grand Master because the Czar was not Catholic, was not celibate and had not been a member of SMOM for the required number of years. (*Id.* 390–91.)

Russian nobles assassinated Czar Paul I in 1801, after which his son, Alexander, became Czar. (*Id.*, 392.) Czar Alexander never took the office of Grand Master and, in 1810, took away both Orders' lands. (*Id.*, 393–94.)

The Russian Orders, as well as Orders in other European countries, elected Fra' Giovanni Battista Tomassi as Grand Master in 1803. The Pope confirmed this election. (*Id.*, 396.) The current Grand Master is Fra' Matthew Festing, who took office in 2008. (Pl. Ex. 126.)

In 1926, an American Association of SMOM was established in New York, followed by a Western Association in 1953 in San Francisco and a Federal Association in 1974 in Washington, D.C. SMOM has obtained federal service mark registrations for a number of marks. These registrations are as follows:

| Reg. No. | Mark | Services | 1st Use in Commerce | Filing Date | Registration Date |
|---|---|---|---|---|---|
| 2,799,898 | shield and cross symbol [3] | Charitable services, namely fundraising for and providing grants to domestic and international humanitarian, hospitaller, medical, religious, and diplomatic causes, in International Class 036 | 12/31/1926 | 9/3/2002 | 12/30/2003 |
| 2,783,934 | KNIGHTS OF MALTA | Charitable services, namely, fundraising for and providing grants to domestic and international humanitarian, hospitaller, medical, religious, and diplomatic causes, in International Class 036 | 12/31/1926 | 9/3/2002 | 11/18/2003 |
| 2,783,933 | SOVEREIGN MILITARY HOSPITALLER ORDER OF ST. JOHN OF JERUSALEM OF RHODES AND OF MALTA | Charitable services, namely, fundraising for and providing grants to domestic and international humanitarian, hospitaller, medical, religious, and diplomatic causes, in International Class 036 | 12/31/1926 | 9/3/2002 | 11/18/2003 |

2. The parties present themselves as Christian charities. The Court struggles with the parties' characterizing themselves in that manner, however. The amounts of money each party has raised for charitable purposes are unimpressive, which leads the Court to believe that the members of both SMOM and the Ecumenical Order are more interested in dressing up in costumes, conferring titles on each other and playing in a "weird world of princes and knights" than in performing charitable acts. (Trscpt., 131.)

3. The mark is attached hereto as Exhibit 1.

| 2,915,824 | HOSPITALLERS OF ST. JOHN OF JERU-SALEM | Charitable services, namely, fundraising for and providing grants to domestic and international humanitarian, hospitaller, medical, religious, and diplomatic causes, in International Class 036 | 4/28/1927 | 11/21/2003 | 1/4/2005 |
| 3,056,803 | ORDER OF ST. JOHN OF JERUSALEM | Charitable services, namely, fundraising for and providing grants to domestic and international humanitarian, hospitaller, medical, religious, and diplomatic causes, in International Class 036 | 4/28/1927 | 11/21/2003 | 2/7/2006 |

Dean Francis Pace, Esq., one of SMOM's knights, signed the applications for these registrations as both attorney of record and as declarant for SMOM. SMOM also uses an unregistered mark that consists of a crown atop an open, fur-lined mantle sable. An ordinary cross superimposed over a Maltese cross sits inside the mantle sable. A chain winds its way through the Maltese cross and encircles the ordinary cross. (Amended Complaint, Ex. 2.) [4]

### D. The Florida Priory's History and Trademark Registration

The Florida Priory's version of historical events differs from SMOM's. As noted, after the 1798 expulsion from Malta, the knights scattered, with some returning to their homelands and some migrating to Russia. The knights who returned to their homelands established independent Orders according to their geopolitical locations and religious persuasions. Meanwhile in Russia, Czar Paul I established two priories of the Order, the Polish Grand Priory for Catholics and the Russian Grand Priory for Russian and Greek Orthodox individuals. (Papanicolau Trscpt., 544.) The Florida Priory claims that the knights in Russia elected Czar Paul I Grand Master and that the Pope confirmed this election. (*Id.*, 544–46.) Czar

Alexander returned the Polish priory to the Pope. (*Id.*, 545.) During this time, a number of Orders of St. John were born in Europe and in Russia with each Order, including SMOM and the Ecumenical Order, claiming ties to the original order. Today there are more than ten such Orders.

The Russian Grand Priory continued in Russia until the Bolshevik revolution, at which time Grand Duke Alexander moved the group's headquarters from St. Petersburg to the United States. (*Id.*, 547.) Over time, the Russian Grand Priory came to be known as Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, the Ecumenical Order ("Ecumenical Order").[5] The Ecumenical Order is the parent of the Florida Priory.

The Ecumenical Order held its first meeting in the United States in New York on January 19, 1908. The minutes of that meeting provide as follows:

Representatives of the nobility of Europe and descendants of noble families present here, who are and whose ancestors have been Knights of the Sovereign Order of Saint John of Jerusalem, have expressed their united wish to gather for the purpose of officially organizing, maintaining and perpetuating a Grand

---

**4.** The mark is attached hereto as Exhibit 2.

**5.** The Ecumenical Order added the "Ecumenical Order" language to its name in 2002.

The addition of this language was intended to distinguish the Ecumenical Order from SMOM. (Papanicolau Trscpt., 588.)

Priory of the Order of the Knights of Malta in these United States of America, continuing with certain modifications, the Sovereign Order of Saint John of Jerusalem as it was constituted under the 70th Grand Master, H.I.M. Paul I. Emperor of Russia.

It is understood that our Order shall be open to qualified individuals of all recognized Christian denominations.

(D. Ex. 57.) The Ecumenical Order incorporated as "The Knights of Malta, Inc." in New Jersey on January 18, 1911. The corporation changed its name to "Sovereign Order of St. John of Jerusalem" in 1953 and was administratively dissolved in 1989. On August 28, 1956, a Delaware corporation, the "Sovereign Order of Saint John of Jerusalem, Inc.," was formed as a companion and successor to the New Jersey corporation. On March 11, 1958, through the Delaware corporation, the Ecumenical Order registered U.S. Trademark Registration No. 659,477, "SOVEREIGN ORDER OF SAINT JOHN OF JERUSALEM AND KNIGHTS OF MALTA," for "use in indicating membership in the Organization." Since 1911, the Ecumenical Order has used its names in the United States without abandonment and has associations and members in new Jersey, Pennsylvania, Delaware, Florida, Texas, North Carolina, South Carolina and Texas.

1977 saw changes in the leadership of the Ecumenical Order. Disputes arose, and in 1981, the Ecumenical Order severed ties with the group that controlled the Delaware Corporation. As a result, the Ecumenical Order operated as an unincorporated entity in the United States. Other than this change of its corporate status, the Ecumenical Order operated in much the same way as it did before the split, continuing to perform its external fundraising and charitable endeavors and using its marks, both registered and unregistered.

The Florida Priory was formed as a priory of the Ecumenical Order as early as 1992 and has used the Ecumenical Order's marks continuously to the present. It operated as an unincorporated entity until its incorporation in Florida in 2005. The Florida Priory also has ties to other American associations of the Ecumenical Order, including both incorporated and unincorporated entities. The current Prince Grand Master of the Ecumenical Order is Nicholas F.S. Papanicolaou. Papanicolaou is also the Ecumenical Order's director.

On June 26, 2008, the Ecumenical Order filed Trademark Application No. 77,509,309. The application describes the mark as "[a] white cross on a red cross at the center of a red outlined Maltese Cross. A red crown is above the Cross." (Amended Complaint, Ex. 3.) [6] The Ecumenical Order claims that the mark was first used in 1798 and first used in commerce in the United States in 1916. (*Id.*)

### E. Relations Among SMOM, the Ecumenical Order and the Florida Priory

Evidence of the Ecumenical Order's activities in the United States since 1908 abounds. The Ecumenical Order incorporated in New Jersey in 1911 and in Delaware in 1956. It obtained a trademark in 1958. The Governor of Indiana issued a March 11, 1977 proclamation declaring April 7, 1977 "Dedication Day" in recognition of the contributions of the Ecumenical Order. (Papanicolau Decl., Ex. 23.)

On November 8, 1983, Thorbjorn Wiklund, Grand Chancellor of the Ecumenical Order, sent a letter to SMOM's headquarters seeking cooperation in an internal dispute involving the Ecumenical Order and a

---

6. The mark is attached hereto as Exhibit 3.

splinter group that obtained control over U.S. Trademark Registration No. 659,477. (Papanicolau Decl., Ex. 7.) The letter was sent on official letterhead bearing the marks "Sovereign Order of Saint John of Jerusalem" and "The Knights Hospitallers of the Sovereign Order of St. John of Jerusalem" and related to activities in the United States. Wiklund's letter demonstrates the SMOM had notice that the Ecumenical Order was using the marks "Sovereign Order of Saint John of Jerusalem" and "The Knights Hospitallers of the Sovereign Order of St. John of Jerusalem" in the United States no later than November 8, 1983, more than 25 years prior to the filing of this action.[7]

The Florida Priory also submits the July 8, 1997 version of Guy Stair Sainty's "The Self–Styled Orders of Saint John." Stair Sainty has been a member of SMOM's "false orders committee" since 1995. The article, originally authored in 1991, acknowledges the Ecumenical Order's 1908 meeting in New York. (Papanicolau Decl., Ex. 10.) Protestant leader Rick Joyner, a member of the Ecumenical Order since 1996 and the Grand Prior of the Grand Priory of North Carolina, authored *Courage that Changed the World: The Extraordinary History of the Knights of St. John,* in 1998. Stair Sainty wrote to Joyner on April 17, 2000 in response to *Courage that Changed the World,* informing Joyner that the Ecumenical Order "is a modern invention, with no connections whatsoever, other than its assumed name, with the genuine Hospitaller Order founded in the Holy Land, whose only legitimate successor is [SMOM]." (Papanicolau Decl., Ex. 20, p. 2, 8.)

The last two Popes, Pope John Paul II and Pope Benedict XVI, have bestowed apostolic blessings upon the Ecumenical Order and upon Joseph Frendo Cumbo, Grand Prior of Canada and Papanicolau's predecessor as Prince Grand Master of the Ecumenical Order. (Papanicolau Decl., Ex. 12, p. 9.) On July 5, 2000, Chancellor Prince Boudewijn de Merode of SMOM wrote to Frendo Cumbo expressing de Merode's opinion that the Ecumenical Order may duly dub knights. (Papanicolau Decl., Ex. 13; Dutch translated to English.)

The Ecumenical Order's 2001 newsletter displays the allegedly infringing marks, including its cross and shield design, and discusses the Ecumenical Order's charitable works. (Papanicolau Decl., Ex. 22.)

Despite extensive evidence of the Ecumenical Order's longstanding presence and activities in the United States, SMOM filed its trademark registrations in September of 2002 and November of 2003. The trademark applications, which Pace executed as both attorney of record and as declarant for SMOM, contain the following declaration:

~ **PTO–Application Declaration:** The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. § 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other

---

**7.** SMOM attempted to cancel Registration No. 659,477, but withdrew its cancellation request with prejudice on April 2, 1987. The Florida Priory claims that SMOM's attempt to cancel the registration was in response to the receipt of the Wiklund letter.

person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true. ~

(Pl. Ex. 16A.) [8] Questions arose regarding SMOM's prosecution of the underlying trademark applications due to the existence of many Orders of St. John. SMOM did not disclose to the United States Patent and Trademark Office ("PTO") the existence of the Florida Priory or the Ecumenical Order and others that were using the same or similar names and marks prior to and at the time SMOM completed its application. SMOM distinguished its trademarks from the Delaware corporation's pre-existing registration and those of other Orders by arguing to the PTO that its work is charitable in nature. SMOM also failed to disclose the existence of the Ecumenical Order and the Florida Priory on its application. SMOM knew, however, the history of the names and marks cited by the examining attorney at the PTO and the fact that other Orders, including the Ecumenical Order and the Florida Priory, are charitable. Pace testified that he had never heard of the Ecumenical Order and first heard of Papanicolau after the inception of this action. (Pace Depo., p. 57–58.) [9] SMOM evidently designated an individual with no personal knowledge of the

Ecumenical Order to sign the trademark applications. Pace did not testify at trial.

The registrations are "incontestable" under 15 U.S.C. § 1605, as they have been in continuous use for more than five years. Under 15 U.S.C. 1115(b), the registration of an incontestable mark is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." To achieve incontestable status, an affidavit must be filed with the PTO stating that the mark has been continuously used for five years subsequent to the registration, that the mark is still in use, and that no pending proceedings regarding the mark exist in either the PTO or in any court. SMOM has filed declarations of continued use for Registration Nos. 2,783,933; 2,783,934; and 2,799,898.

The Ecumenical Order's Trademark Application No. 77,509,309 was published for opposition on December 16, 2008. On April 15, 2009, SMOM filed Opposition No. 91,189,784 before the United States Trial and Appeal Board against the application. SMOM filed this action on July 8, 2009, after which three of the five marks had become incontestable. The opposition was stayed pending the outcome of this action.

## II. CONCLUSIONS OF LAW

While the Court has gone into significant detail regarding the history of the parties' respective Orders, the Court is not an arbiter of religious or historical disputes. Whether either SMOM or the Ecu-

---

8. SMOM's Exhibit 17A contains the trademark application for Trademark No. 2,783,933, including Pace's declaration. SMOM's Exhibit 18A contains only the first page of the trademark application for Trademark No. 2,915,824, which does not include any declaration. SMOM's Exhibit 19A contains the

trademark application for Trademark No., 3,056,803, including Pace's declaration.

9. Pace explained, "I know that some of the false orders slap that ["ecumenical order"] on the end of their name, or somewhere in their name, but no such order ever existed." (Pace Depo., p. 57.)

menical Order is the "real" Knights of Malta is not at issue. At issue are the parties' trademark claims.[10]

The Amended Complaint alleges four causes of action: (1) violation of § 32 of the Lanham Act (federal trademark infringement pursuant to 15 U.S.C. § 1114), (2) violation of Sec. 43(a) of the Lanham Act for false designation of origin pursuant to 15 U.S.C. § 1125(a), (3) common law unfair competition, and (4) violation of Fla. Stat. § 501.201, et seq. Florida's Unfair and Deceptive Trade Practices Act ("FDUPTA").

The Amended Answer and Counterclaim alleges five causes of action: (1) cancellation of U.S. Trademark Registration No. 2,783,933, (2) cancellation of U.S. Trademark Registration No. 2,915,824, (3) cancellation of U.S. Trademark Registration No. 3,056,803, (4) cancellation of U.S. Trademark Registration No. 2,783,934, and (5) dismissal of Opposition No. 91,189,784.

## A. The Registered Trademarks

SMOM alleges that the Florida Priory infringes SMOM's registered trademarks. As noted, SMOM's registered marks consist of Registration Nos. 2,783,934, "Knights of Malta;" 2,783,933, "Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes and of Malta;" 2,915,-824, "Hospitallers of St. John of Jerusalem;" 3,056,803, "Order of St. John of Jerusalem;" and Registration No. 2,799,898, the cross and shield mark.

The Florida Priory does not challenge the means by which SMOM obtained Registration No. 2,799,898, its cross and shield mark.[11] The Florida Priory does challenge the remaining registered marks on the ground that they were procured by fraud. Although these marks are now incontestable, these marks are subject to challenge on the grounds that they were fraudulently obtained. *See* 15 U.S.C. § 1115(b)(1). Although "fraud" is a strong term that is not to be used lightly, the Federal Circuit has held that knowing misrepresentations to the PTO with the intent to deceive constitute fraud. *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed.Cir.2009) ("We hold that a trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the PTO."). Whereas direct evidence of such intent is rarely available, intent can be inferred from indirect and circumstantial evidence. *Id.* at 1245 (citing *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed.Cir.2008)). "When drawing an inference of intent, 'the involved conduct,

---

**10.** Evaluating trademark infringement claims with regard to religious organizations presents inherent difficulties. As David A. Simon notes in *Register Trademarks and Keep the Faith: Trademarks, Religion and Identity,* 49 IDEA 233, 269 (2009), "courts cannot resolve disputes over religious authenticity. Instead, the courts must use the principles of trademark and unfair competition law to settle disputes that, at their heart, deal with religious identity." The Court is not in a position to rule on the religious legitimacy issues about which SMOM and the Florida Priory disagree. It is common knowledge that many religious groups use the names "Baptist," "Presbyterian," "Methodist," "Lutheran" and "Episcopal."

**11.** The only grounds asserted in the Amended Counterclaim for the cancellation of this mark is that SMOM allegedly misrepresented to the PTO that it used the mark in commerce, that is, that it raised funds from both members and non-members. At trial, the Florida Priory dropped all cancellation claims relating to fundraising. (Trscpt., 660–61.)

The Florida Priory's other ground for cancellation was SMOM's alleged misrepresentation to the PTO that SMOM is a sovereign nation. The Court dismissed this argument from the bench, noting that SMOM was forced to designate itself as a "sovereign nation" on the applications because the applications did not provide a "sovereign entity" designation. (*Id.*, 662.)

viewed in light of all the evidence ... must indicate sufficient culpability to require a finding of intent to deceive.'" *Id.* (quoting *Kingsdown Med. Consultants v. Hollister Inc.,* 863 F.2d 867, 876· (Fed.Cir.1988)).

 SMOM obtained registration of the marks "Knights· of Malta," "Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes and of Malta," "Hospitallers of St. John of Jerusalem" and "Order of St. John of Jerusalem." SMOM put forth an individual to sign the applications for these marks who had no knowledge of the Ecumenical Order or the Florida Priory. The application declaration, however, averred that no other entity used the marks in question. This averment was false. SMOM knew of the existence and domestic presence of the Ecumenical Order at the time it filed the trademark applications. Given that SMOM claims there is a likelihood of confusion with the Ecumenical Order, SMOM had a duty to disclose the existence of the Ecumenical Order to the PTO.

The Court sees a parallel with the recent Supreme Court case *Global–Tech Appliances, Inc. v. SEB S.A.,* — U.S. —, 131 S.Ct. 2060, 179 L.Ed.2d 1167 (2011), which discusses whether active inducement of patent infringement requires actual knowledge that the induced acts are infringing. The question before the Supreme Court was whether active inducement of patent infringement requires actual knowledge of the patent as opposed to deliberate indifference to a known risk that the induced practice might violate a patent. *See id.* at 2065. The Supreme Court held that the appropriate standard is willful blindness as opposed to deliberate indifference, explaining that "a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Id.* at 2070–71.

Here, it is indisputable that SMOM had actual knowledge of the existence of the Ecumenical Order at least as early as 1983, nearly two decades prior to its filing its trademark applications. SMOM then had Pace, an attorney with no personal knowledge of the Ecumenical Order, execute the trademark applications. To the extent that a willful blindness standard applies here, the Court concludes that SMOM's failure to inform Pace of the existence of the Ecumenical Order is evidence of willful blindness on SMOM's part. Even if SMOM disputes actual knowledge, no adequate explanation has been offered for SMOM's subjective ignorance of the Ecumenical Order and the Florida Priory. Accordingly, these· registrations are cancelled and SMOM is entitled to no relief under these registrations.

As noted, the Florida Priory does not challenge the means by which SMOM obtained Registration No. 2,799,898, SMOM's cross and shield mark. Accordingly, the Court will address the merits of SMOM's claim that the Florida Priory's unregistered symbolic mark infringes SMOM's registered symbolic mark.

 To prove federal trademark infringement pursuant to 15 U.S.C. § 1114, SMOM must prove whether the Florida Priory uses in commerce any colorable imitation of SMOM's marks in connection with the sale, offering for sale, or advertising of any services or in connection with which such use is likely to cause confusion, to cause mistake, or to deceive. Whether a defendant's use of a trademark is likely to cause confusion is a question of fact. *Swatch Watch, S.A. v. Taxor, Inc.,* 785 F.2d 956, 958 (11th Cir.1986). The Eleventh Circuit identifies seven factors to consider in the likelihood of confusion analysis: "(1) the type of mark, (2) the similarity of the marks, (3) the similarity of the parties' products or services, (4) the

similarity of the parties' retail outlets and customers, (5) the similarity of the advertising media used, (6) the defendant's intent, and (7) the actual confusion engendered by the parties' uses." *Ocean Bio-Chem, Inc. v. Turner Network Television, Inc.*, 741 F.Supp. 1546, 1553 (S.D.Fla.1990) (citing *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir.1989)). "The court does not have to consider all of these factors in every case and in some cases, 'new' factors may merit consideration. The real question is whether the court's ultimate determination about the 'likelihood of confusion' was correct." *Swatch Watch*, 785 F.2d at 958 (quoting *Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1543 (11th Cir.1985)).

▮ There exists no likelihood of confusion with regard to SMOM's registered symbolic mark and the Florida Priory's unregistered symbolic mark. SMOM's registered symbolic mark consists of a Maltese cross on a shield. In contrast, the Florida Priory's unregistered symbolic mark consists of an ordinary cross on a shield. The shield is superimposed over a Maltese cross. A crown sits atop the Maltese cross. The Florida Priory's design contains two crosses, whereas SMOM's registered mark contains only one. SMOM's mark contains no crown. These marks are easily distinguishable, thus removing any possibility for consumer confusion. SMOM's claim for infringement of Registration No. 2,799,898 fails.

**B. The Unregistered Trademark**

Section 43(a) of the Lanham Act grants protection to certain unregistered trademarks with regard to infringement and unfair competition. *See Teter v. Glass Onion, Inc.*, 723 F.Supp.2d 1138, 1154 (W.D.Mo.2010). *See also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–68, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (explaining "it is common ground that

§ 43(a) protects qualifying unregistered trademarks" and noting that the protectability analysis for unregistered marks mirrors the protectability analysis for registered marks).

The Court declines to rule on whether SMOM's unregistered symbolic mark bears any relevant similarity to the Florida Priory's unregistered symbolic mark because that issue is currently before the PTO. SMOM has filed Opposition No. 91,189,784 to the Ecumenical Order's Trademark Application No. 77,509,309, which was stayed pending the outcome of this action. The Court defers to the PTO's determination of this issue.

**C. False Advertising**

▮ SMOM also claims that the Florida Priory misappropriates SMOM's history. References to the history of an entity or any advertisement with a historic connection are governed by 15 U.S.C. § 1125(a)(1)(B), the false advertising prong of the Lanham Act. To succeed on the merits of a false advertising claim, SMOM must plead and prove that the Florida Priory's alleged "deception is likely to influence the purchasing decision." *Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002) (quoting *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 311 (1st Cir.2002)). SMOM must prove that the false or misleading descriptions of fact were "material," that is, that consumers relied on them in making their purchasing decisions. "The plaintiff must establish materiality even when a defendant's advertisement has been found literally false." *Id.* Some evidence of consumer reaction must be produced. *See id.* The Court will not address the false advertising claim with regard to any specific trademark, as § 1125(a) "is one of the few provisions [of the Lanham Act] that goes

beyond trademark protection." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003).

■ SMOM's false advertising claim is a non-starter. References by the Florida Priory to a shared history with SMOM are perfectly appropriate, as the organizations shared a history prior to 1798. Any claim for false advertising also rings hollow given that the Florida Priory expressly associates itself with the Ecumenical Order, a non-Catholic organization.

### D. Unfair Competition Under Florida Common Law

SMOM alleges that the Florida Priory's conduct constitutes unfair competition under Florida common law. "Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n. 4 (11th Cir.2001) (quoting *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1521 (11th Cir. 1991)). A common law claim for unfair competition hinges on the success of the federal trademark infringement and false advertising claims. *See Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1333 (11th Cir.2008) (noting that party's inability to bring Lanham Act unfair competition claim under theories of either false advertising or trademark infringement doomed its common law trademark infringement and unfair competition claims).

Whereas SMOM cannot establish a claim for trademark infringement with regard to Registration No. 2,799,898, its cross and shield symbol, its unfair competition claim with regard to this mark fails.

■ As noted *supra*, the Court has cancelled Registration Nos. 2,783,934, "Knights of Malta;" 2,783,933, "Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes and of Malta;" 2,915,824, "Hospitallers of St. John of Jerusalem;" 3,056,803, "Order of St. John of Jerusalem." Whereas a trademark registration is not a precondition for bringing a common law unfair competition claim [12], the Court will address whether there exists a likelihood of confusion between the above-referenced SMOM marks and the Florida Priory's unregistered marks.

There are four categories of marks: generic, descriptive, suggestive and arbitrary. *See Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir.1999). Stronger marks receive greater protection, whereas weaker marks receive lesser protection. *See id.* Generic marks, such as "liquor store," "refer to a class of which an individual service is a member," whereas descriptive marks, such as "vision center" "describe a characteristic or quality of an article or service." *Id.*[13]

■ There is no likelihood of confusion between SMOM's aforementioned trademarks and the Florida Priory's unregistered marks because SMOM's marks are weak and merely descriptive. The marks consist of commonly used historical locations, religious terminology, and geograph-

---

**12.** *Planetary Motion, Investacorp* and *Natural Answers* analyzed common law unfair competition claims in the context of unregistered trademarks. *See Planetary Motion*, 261 F.3d at 1190; *Investacorp*, 931 F.2d at 1521; *Natural Answers*, 529 F.3d at 1326.

**13.** As noted *supra*, the Eleventh Circuit identifies seven factors to consider in the likelihood

of confusion analysis. *See Ocean Bio–Chem*, 741 F.Supp. at 1553 (S.D.Fla.1990) (listing the factors). The court need not always consider each factor; "[t]he real question is whether the court's ultimate determination about the 'likelihood of confusion' was correct." *Swatch Watch*, 785 F.2d at 958 (quoting *Univ. of Ga.*, 756 F.2d at 1543).

ic terms that are not specifically associated with SMOM. As noted, the Ecumenical Order has been using these terms in the United States for over a century. The Court's own research indicates that there are numerous Orders that use this type of terminology in their names.[14] Moreover, the Florida Priory clearly states on its website that it is not SMOM. The Florida Priory shares a history with SMOM, yet is a distinct entity and is ecumenical in nature as opposed to the exclusively Catholic SMOM.

### E. Alleged Violation of FDUPTA

■ FDUPTA makes illegal "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce...." Fl. Stat. § 501.204(1). The purpose of FDUPTA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fl. Stat. § 501.202(2). A consumer claim for relief under FDUPTA consists of three elements: (1) a deceptive act or an unfair practice; (2) causation; and (3) actual damages. *See McGuire v. Ryland Grp., Inc.,* 497 F.Supp.2d 1347, 1355 (M.D.Fla. 2007) (citing *Rollins, Inc. v. Butland,* 951 So.2d 860, 869 (Fla. 2d DCA 2006)). SMOM alleges that the Florida Priory violates FDUPTA by "mislead[ing] consumers into making charitable contributions by falsely suggesting that [the Florida Priory] is authorized by or affiliated with [SMOM]." (Amended Complaint, ¶ 39.)

The success of an FDUPTA claim with regard to an unregistered mark also hinges on the success of the federal trademark infringement claim. *See Natural Answers,* 529 F.3d at 1333. *See also Crystal Entertainment & Filmworks, Inc. v. Jurado,* 643 F.3d 1313, 1323 (11th Cir.2011) (noting that "the legal standards we apply to [the FDUPTA] claim are the same as those we apply under section 43(a) of the Lanham Act") (citing *Custom Mfg. and Engineering, Inc. v. Midway Services, Inc.,* 508 F.3d 641, 652–53 (11th Cir.2007)).

■ Whereas SMOM cannot establish a claim either for trademark infringement with regard to Registration No. 2,799,898, its cross and shield symbol, its unfair competition claim with regard to this mark fails.

■ SMOM has no FDUPTA claim in relation to its now-cancelled registrations, "Knights of Malta," "Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes and of Malta," "Hospitallers of St. John of Jerusalem," and "Order of St. John of Jerusalem," because no likelihood of confusion exists between these marks and the Florida Priory's unregistered marks. The Florida Priory plainly designates itself as part of the Ecumenical Order, which is unquestionably a non-Catholic organization. No reference to the Ecumenical Order's and SMOM's shared history could possibly be construed as deceptive, as the organizations' pre-1798 histories are identical.

### F. Attorneys' Fees

The Florida Priory also requests costs and attorneys' fees. The Lanham Act pro-

---

**14.** These Orders include The Royal Order of the Knights of Our Lord Jesus Christ, formed as a successor to the Knights Templar, which currently goes by the name "The Military Order of Christ," *see http://knightstemplars. ning.com/group/friendsoftheorderofchrist,* (last visited Sept 29, 2011); the Order of the

Knights of the Cross with the Red Star, *see http://blessed-gerard.org/redstar.htm,* (last visited Sept 29, 2011); and The Military and Hospitaller Order of Saint Lazarus of Jerusalem–Malta, *see http://www.orderofsaintlazarus. org/a_welcome.html* (last visited Sept. 29, 2011).

vides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Court will not decide at this time whether this case is an "exceptional" case under the Lanham Act. If the Florida Priory submits a post-judgment motion for attorneys' fees, the Court will consider the issue at that time.

## III. *CONCLUSION*

THE COURT, having conducted a bench trial on this matter and having considered the pertinent portions of the record, hereby

ORDERS AND ADJUDGES that SMOM's request for injunctive relief is DENIED. SMOM's claims for trademark infringement under the Lanham Act, false advertising under the Lanham Act, common law unfair competition and violation of FDUPTA all fail. It is further

ORDERED AND ADJUDGED that SMOM's Trademark Registration Nos. 2,783,934; 2,783,933; 2,915,824; and 3,056,803; are CANCELLED. It is further

ORDERED AND ADJUDGED that the Florida Priory's motion to strike SMOM's witnesses, filed February 18, 2011 [**DE 120**] is DENIED as MOOT. William Regan, one of the subjects of the motion to strike, testified at trial, but the Court did not consider his testimony in the preparation of this order. It is further

ORDERED AND ADJUDGED that SMOM's motion to quash the trial subpoena for John Dunlap, filed February 25, 2011 [**DE 134**], is DENIED as MOOT. The Florida Priory did not call John Dunlap at trial. Final judgment will issue by separate order.

Int. Cl.: 36

Prior U.S. Cls.: 100, 101 and 102

**United States Patent and Trademark Office**

Reg. No. 2,799,898
Registered Dec. 30, 2003

## SERVICE MARK
### PRINCIPAL REGISTER

SOVEREIGN MILITARY HOSPITALLER ORDER OF SAINT JOHN OF JERUSALEM OF RHODES AND OF MALTA (MALTA SOVEREIGN NATION AND RELIGIOUS ORDER OF THE ROMAN CATHOLIC CHURCH)
VIA DEI CONDOTTI 68
ROME, ITALY I-00187

FOR: CHARITABLE SERVICES, NAMELY, FUND RAISING FOR AND PROVIDING GRANTS TO DOMESTIC AND INTERNATIONAL HUMANITAR-IAN, HOSPITALLER, MEDICAL, RELIGIOUS, AND DIPLOMATIC CAUSES, IN CLASS 36 (U.S. CLS. 100, 101 AND 102).

FIRST USE 12-31-1099; IN COMMERCE 12-31-1926.

SER. NO. 76-446,059, FILED 9-3-2002.

CHRIS WELLS, EXAMINING ATTORNEY

EXHIBIT 2

Exhibit 3

### *FINAL JUDGMENT*

THE COURT, having conducted a bench trial in this matter and having issued its finding of fact and conclusions of law, hereby

ORDERS AND ADJUDGES that FINAL JUDGMENT IS HEREBY ENTERED in favor of Defendant, The Florida Priory of Knights Hospitallers of the Sovereign Order of St. John of Jerusalem,

Knights of Malta, the Ecumenical Order ("Florida Priory") and against Plaintiff, Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes and of Malta ("SMOM") on counts one through four of the amended counterclaim. Final judgment against SMOM is entered on all counts of the amended complaint. The Court will retain jurisdiction over this matter to consider any motions for costs and attorneys' fees. The Clerk of Court shall CLOSE this case and DENY any pending motions as MOOT.