[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14251
_____

D.C. Docket No. 9:09-cv-81008-KLR


SOVEREIGN MILITARY HOSPITALLER ORDER OF SAINT JOHN OF
JERUSALEM OF RHODES AND OF MALTA,

Plaintiff–Counter Defendant–Appellant,

versus

THE FLORIDA PRIORY OF THE KNIGHTS HOSPITALLERS OF THE
SOVEREIGN ORDER OF SAINT JOHN OF JERUSALEM, KNIGHTS OF
MALTA, THE ECUMENICAL ORDER,

Defendant–Counter Claimant–Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 15, 2015)

Before MARCUS, WILLIAM PRYOR, and JILL PRYOR, Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

This appeal is the second in a long-running intellectual property dispute between two religious organizations. The Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes and of Malta alleges that the Florida Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, the Ecumenical Order is infringing its registered service marks in violation of the Lanham Act, 15 U.S.C. § 1114, and Florida law. After a bench trial, the district court entered judgment for the Florida Priory. *See Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, the Ecumenical Order (SMOM I)*, 816 F. Supp. 2d 1290, 1307–08 (S.D. Fla. 2011). In the first appeal, we reversed in part and remanded for the district court to reconsider whether the parties' marks are likely to be confused. *See Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, the Ecumenical Order (SMOM II)*, 702 F.3d 1279, 1297–98 (11th Cir. 2012). We were also critical of disparaging comments that the district judge made about the parties. On remand, the district court misapplied several factors in its analysis of likely confusion, incorrectly assessed the Florida Priory's defense of prior use, relied on historical testimony that we previously deemed inadmissible, and misinterpreted

2

our instructions about consulting facts outside the record. Because the district court erred again, we reverse again. But we deny the Sovereign Order's request to reassign the case to a different district judge.

## I. BACKGROUND

For purposes of background, we identify the parties to this litigation and the marks in dispute. We also review the relevant procedural history. For an even fuller account, see our previous opinion, *SMOM II*, 702 F.3d at 1283–89.

### A. *The Parties*

The plaintiff is the Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes and of Malta. It is a religious order of the Roman Catholic Church. The Sovereign Order is headquartered in Rome, Italy, and it performs charitable works across the globe. For example, the Sovereign Order supports the operation of the Holy Family Hospital in Bethlehem and several medical clinics in Haiti.

The defendant is the Florida Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, the Ecumenical Order. It too is a religious charitable organization. The Florida Priory is associated with a parent organization, the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, the Ecumenical Order. The Ecumenical Order is not associated with any one church or branch of Christianity.

3

*B. The Marks*

This litigation involves five of the Sovereign Order's registered service marks: one design mark and four word marks.  The Sovereign Order's design mark is an eight-pointed Maltese cross on a shield:



The Sovereign Order's word marks are:

Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes and of Malta

Knights of Malta

Hospitallers of St. John of Jerusalem

Order of St. John of Jerusalem

The Sovereign Order's design mark and its first two word marks became "incontestable" in 2008 and 2009.  That is, the Sovereign Order filed an affidavit with the United States Patent and Trademark Office attesting that it used the marks continuously for five years and satisfied the other statutory criteria for incontestability.  *See* 15 U.S.C. § 1065.

4

The Sovereign Order alleges that the Florida Priory's name and symbol infringe its five registered service marks. The Florida Priory's name—"Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, the Ecumenical Order"—is unregistered. The Florida Priory's symbol is a white cross on a red shield, centered on a white Maltese cross with a red crown above it:



Its registration is pending.

### C. Procedural History

This litigation spans six years and consists of a bench-trial judgment, an appeal, a remand decision, and now a second appeal. We review the relevant procedural history below.

### 1. First District Court Decision

The Sovereign Order initiated this suit in 2009. It sued the Florida Priory for infringement and false advertising under the Lanham Act, unfair competition under Florida common law, and violations of the Florida Deceptive and Unfair Trade Practices Act. The Florida Priory disputed those claims. It also filed several

counterclaims, seeking cancellation of the Sovereign Order's four word marks. The Florida Priory alleged that the Sovereign Order defrauded the Patent and Trademark Office by applying for registration without disclosing that a Delaware organization was already using similar marks.

After a bench trial in 2011, the district court ruled against the Sovereign Order and for the Florida Priory on their respective claims and counterclaims. The district court rejected the Sovereign Order's claim of false advertising. It found that the Florida Priory did not misrepresent the "nature, characteristics, qualities, or geographic origin" of its services, 15 U.S.C. § 1125(a)(1)(B), because the Sovereign Order and the Florida Priory "shared a history prior to 1798" and because the Florida Priory "expressly associates itself with the Ecumenical Order, a non-Catholic organization." *SMOM I*, 816 F. Supp. 2d at 1302. In reaching its historical finding, the district court relied on the testimony of Nicholas F.S. Papanicolaou, the Prince Grand Master of the Ecumenical Order. With respect to the Florida Priory's counterclaims, the district court cancelled the Sovereign Order's word marks. It found that the Sovereign Order defrauded the Patent and Trademark Office because, at the time of registration, the Sovereign Order was "willfully blind" to the fact that the Delaware organization was already using similar marks. *Id.* at 1300. Because the Sovereign Order's word marks were cancelled, the district court concluded that its infringement claims for those marks

6

failed as well.  As for the design mark, the district court rejected the Sovereign Order's claim of infringement because it found the parties' marks visually distinguishable, "thus removing any possibility for consumer confusion."  *Id.* at 1301.  Finally, the district court rejected the Sovereign Order's claims under state law for the same reasons it rejected the Sovereign Order's claims of infringement. It added that the parties' word marks are not likely to be confused because "[t]he Court's own [Internet] research indicates that there are numerous Orders that use this type of terminology in their names."  *Id.* at 1303 & n.14.

## 2.  First Appeal

In the first appeal, we affirmed in part and reversed in part.  We affirmed the judgment for the Florida Priory on the Sovereign Order's claim of false advertising.  We ruled that "the district court erred when it permitted Papanicolaou, a lay witness, to testify about historical matters."  *SMOM II*, 702 F.3d at 1295. Papanicolaou was never "qualified as an expert witness" and could only testify about matters within his "'personal knowledge,'" *id.* (quoting Fed. R. Evid. 602), which meant that the finding of the district court that the Sovereign Order and the Florida Priory "shared a history prior to 1798" was unsupported.  *Id.*  But we concluded that this error was harmless because the district court gave an "alternative ground" to support its decision—namely, that the Florida Priory is non-Catholic.  *Id.*

7

We reversed with respect to the remaining claims and counterclaims. We reversed the cancellation of the Sovereign Order's word marks because the district court applied the wrong legal standard and because the Florida Priory failed to prove that the Sovereign Order had the requisite mental state for fraud. We also explained that the Patent and Trademark Office was not misled because, at the time of registration, the Sovereign Order successfully distinguished its marks by explaining they were *service* marks, unlike the Delaware organization's *collective membership* mark. We then reversed the judgment for the Florida Priory on the Sovereign Order's claims of infringement. The district court failed to apply the seven-factor balancing test required by our precedent. We remanded "so the district court [could] conduct the proper, multi-factor infringement analysis for the design marks . . . [and] word marks." *Id.* at 1294 (footnote omitted). Because the Sovereign Order's state-law claims were tied to its infringement claims, we remanded those claims as well. We instructed the district court "to limit its analysis to facts in the record and to refrain from consulting outside sources on the Internet that have not been cited, submitted, or recognized by the parties." *Id.* at 1296.

The Sovereign Order requested that we reassign the case to a different district judge on remand. The Sovereign Order complained about several comments that the district judge made about the parties and their motives. For

8

example, in his published opinion, the district judge wrote the following

disparaging comment:

> The parties present themselves as Christian charities.  The Court
> struggles with the parties' characterizing themselves in that manner,
> however.  The amounts of money each party has raised for charitable
> purposes are unimpressive, which leads the Court to believe that the
> members of both [the Sovereign Order] and the [Florida Priory] are
> more interested in dressing up in costumes, conferring titles on each
> other and playing in a "weird world of princes and knights" than in
> performing charitable acts.

816 F. Supp. 2d at 1294 n.2 (quoting his own comments from trial).  The district

judge also stated, "It just baffles me that two charitable groups are spending their

charitable money suing one another and wasting all . . . these funds on litigation."

Trial Tr. 34.  On appeal, we deemed these comments "offensive," "unnecessar[ily]

belittling," and "wholly inappropriate."  *SMOM II*, 702 F.3d at 1297.

Nevertheless, we found that the district judge exhibited no "actual bias in favor of,

or against, one party over the other" and explained that reassignment would require

"duplication of resources" in this "fact-intensive" case.  *Id.*  We denied the

Sovereign Order's request for reassignment and expressed our expectation that "on

remand, both parties will be treated with the respect they deserve and that the

district court will be able to freshly consider the remanded claims."  *Id.*

### 3.  Second District Court Decision

On remand, the district court again entered judgment for the Florida Priory

on all of the Sovereign Order's claims.  With respect to the claims of infringement,

9

the district court identified and applied the seven-factor balancing test for confusion: "(1) the type of mark; (2) the similarity of the marks; (3) the similarity of the services the marks represent; (4) the similarity of the parties' service outlets and customers; (5) the nature and similarity of the parties' advertising media; (6) the defendant's intent; and (7) any actual confusion." *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, the Ecumenical Order* (*SMOM III*), No. 09-81008-CIV, slip op. at 3 (S.D. Fla. Aug. 19, 2014) (citing *SMOM II*, 702 F.3d at 1293). It also considered the Florida Priory's defenses of prior use with respect to the Sovereign Order's incontestable marks. Ultimately, the district court entered judgment for the Florida Priory on the Sovereign Order's claims of infringement and its claims under state law.

The district court found that a few factors in the balancing test weigh in favor of the Sovereign Order. The first factor favors the Sovereign Order, the district court found, with respect to its incontestable marks—*i.e.*, the design mark, "Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes and of Malta," and "Knights of Malta." The district court recognized that, under *Dieter v. B&H Industries of Southwest Florida, Inc.*, 880 F.2d 322, 329 (11th Cir. 1989), an incontestable mark is presumptively strong. The district court also found that the

10

similarity of the marks favors the Sovereign Order with respect to its word marks. The district court found "unmistakable" similarities between the parties' word marks, explaining that the Florida Priory's name includes nearly all of the Sovereign Order's marks. *SMOM III*, No. 09-81008-CIV, slip op. at 8. The addition of "Florida Priory" and "Ecumenical Order," according to the district court, "is insufficient to render the [Priory's name] dissimilar." *Id.* The district court also found that the similarity of services favors the Sovereign Order with respect to all of its marks. It recognized that both parties "are engaged in charitable activities." *Id.* at 9. But it attributed little weight to this factor because "[t]here is nothing unique in charitable services" and "[c]ountless charitable organizations exist throughout the world." *Id.*

The district court found that the remaining factors—and the overall balance—favor the Florida Priory. With respect to the first factor, the district court found that the Sovereign Order's contestable word marks—"Hospitallers of St. John of Jerusalem" and "Order of St. John of Jerusalem"—are weak. It found that the contestable word marks employ "commonly used generic words" like "Saint John" and "hospitaller." *Id.* at 7. It also found that the marks are used extensively by third parties. The district court cited testimony that "[a]t least 20 charitable organizations can be found on the Internet that use the terms 'Saint John,' 'Knights,' 'Hospitallers,' and 'Knights of Malta' in the names." *Id.* And many

11

"Orders of St. John" and "Orders of the Knights of Malta," foreign and domestic, are featured in tourism publications for the island of Malta. *Id.*  Moreover, several groups "share the non-exclusive license to use [the Sovereign Order's] name." *Id.*

As for the similarity of the marks, the district court found that it favors the Florida Priory with respect to the Sovereign Order's design mark.  Citing its earlier decision, the district court reiterated that the parties' "two symbols are easily distinguishable." *Id.* at 8.  The Florida Priory's design "contains two crosses" to the Sovereign Order's one. *SMOM I*, 816 F. Supp. 2d at 1301.  And the Florida Priory's shield has an ordinary cross on it, but the Sovereign Order's has a Maltese cross.  Moreover, only the Florida Priory's mark features a crown.

The district court found that the fourth and fifth factors favor the Florida Priory.  The district court found "both similarities and differences between the parties' methods for fundraising." *SMOM III*, No. 09-81008-CIV, slip op. at 9–10.  Both parties use newsletters, the Internet, and email to reach Christian donors of all denominations.  But, unlike the Florida Priory, the Sovereign Order also obtains funds from the federal government and some Catholic organizations.  Moreover, only the Ecumenical Order has advertised on television.  Based on these "minor differences" in fundraising and the Sovereign Order's failure to prove that "the parties' advertising reached the same individuals," *id.* at 11–12, the district court found that the fourth and fifth factors favor the Florida Priory.

12

The district court also found that the defendant's intent favors the Florida Priory. It found that the Florida Priory's parent, the Ecumenical Order, has used the marks at issue since 1911, well before the Sovereign Order began using them. To trace this history, the district court relied on Papanicolaou's testimony about several documents: minutes from a 1908 meeting of the "Knights of Malta"; incorporation documents from 1911 for a New Jersey organization, "Knights of Malta"; incorporation documents from 1956 for a Delaware organization, "Sovereign Order of Saint John of Jerusalem, Inc."; and registration documents filed by the Delaware organization in 1958 for the collective membership mark "Sovereign Order of Saint John of Jerusalem, Knights of Malta," dating the mark's first use in commerce as 1911. The district court credited Papanicolaou's testimony that the Ecumenical Order shares an unbroken lineage with the Delaware and New Jersey organizations. Furthermore, the district court credited Papanicolaou's testimony that his organization added "Ecumenical Order" to its name in 2002 to distinguish itself from the Sovereign Order. It ultimately found no evidence of bad faith, "especially considering that [the Florida Priory's] parent's use of the mark in commerce predated [the Sovereign Order's] use." *Id.* at 12.

The district court found that the seventh and final factor—actual confusion—favors the Florida Priory. The district court first found that the Sovereign Order *itself* has admitted that the parties' marks are not likely to be

confused. When applying for registration in 2002, the Sovereign Order attested that its word marks were not likely to cause confusion with any preexisting marks. Yet, the district court found that the Ecumenical Order was already using the mark "Sovereign Order of Saint John of Jerusalem, Knights of Malta." *Id.* at 13. Accordingly, the Sovereign Order was either "aware that [the Florida Priory's] parent existed but did not believe that the marks were confusingly similar, or [the Sovereign Order] was unaware that [the Florida Priory's] parent existed." *Id.* at 14. "Either scenario," the district court reasoned, "leads to a finding of absence of actual confusion." *Id.* The district court also found lacking the evidence of actual confusion that the Sovereign Order presented at trial. For example, the Sovereign Order introduced an email from Gail Quigley, the cousin of the president of the Sovereign Order's American Association. Quigley had received an email from the Florida Priory soliciting donations and forwarded it to her cousin, adding, "I don't know how I got on this distribution list. I'm confused about this group and your Order of Malta. I think you have your origins with them. They seem much more military." The district court did not find this email exchange useful because Quigley was not a donor and because her emails suggest she understood the difference between the Sovereign Order and the Florida Priory. Finally, the district court denied the Sovereign Order's motion to supplement the record with evidence of actual confusion since the bench trial in 2011. The proposed evidence included

14

an article in the *New York Times* discussing the prevalence of copycat orders, a press release about the Florida Priory that mistakenly directs readers to the Sovereign Order's website, and evidence that the Florida Priory falsely claims to be recognized by the Vatican.  The district court denied the motion in a footnote, reasoning that it "was instructed [by the Court of Appeals] to evaluate the likelihood of confusion with regard to the marks at issue based on the evidence presented at trial."  *Id.* at 14 n.1.

After considering the seven factors, the district court ruled in favor of the Florida Priory.  It found that the balance of factors weighed in favor of the Florida Priory with respect to the Sovereign Order's contestable marks.  As for the incontestable marks, the district court found that the Sovereign Order's claims failed "on account of the prior use defense."  *Id.* at 17.  Specifically, the Florida Priory challenged the Sovereign Order's incontestable marks under sections 1115(b)(5) and (b)(6) of the Lanham Act, 15 U.S.C. § 1115(b)(5)–(6).  The district court considered those provisions and, without specifying which one it was applying, found that the Florida Priory had proved prior use.  Again relying on Papanicolaou's testimony about the early–twentieth century documents, the district court found that the Ecumenical Order had used the marks *before* the Sovereign Order used them.  *SMOM III*, No. 09-81008-CIV, slip op. at 15–16.

15

In this second appeal, the Sovereign Order complains about several comments that the district judge made on remand. For instance, the Sovereign Order complains that the district judge again impugned its motives, speculating that "it's obvious what's going on here, that [the Sovereign Order] waited five years until [its marks] became [i]ncontestable where [it] knew all along [that] the defendant was using this name." Tr. 3. Additionally, the district judge told the parties, "[A]s I looked over what the other senior judges are doing, a number of them say we don't want any trademark cases, and I thought, you know, that's probably a good idea." *Id.* at 4.

## II. STANDARDS OF REVIEW

"After a bench trial, we review the district court's conclusions of law *de novo* and the district court's factual findings for clear error," *Tartell v. S. Fla. Sinus & Allergy Ctr., Inc.*, 790 F.3d 1253, 1257 (11th Cir. 2015) (quoting *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1230 (11th Cir. 2009)), including its finding that "two marks are not likely to be confused," *SMOM II*, 702 F.3d at 1289. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 542 (1948). We review the denial of a motion to supplement the record for abuse of discretion. *Elston v. Talladega Cty. Bd. of*

16

*Educ.*, 997 F.2d 1394, 1405 (11th Cir. 1993).  Finally, we can reassign a case to a different district judge on remand, but it is an "extraordinary" measure that "we do not order . . . lightly."  *United States v. Shaygan*, 652 F.3d 1297, 1318 (11th Cir. 2011) (internal quotation marks omitted).

## III.  DISCUSSION

In this second appeal, the Sovereign Order challenges the judgment for the Florida Priory on its claims of infringement under the Lanham Act and its related claims under state law.  In the event of a remand, the Sovereign Order renews its request to reassign the case to a different district judge.  The Florida Priory, for its part, largely defends the district court and its various findings and rulings.

The district court committed reversible errors.  With respect to infringement, the district court erred in considering several of the factors for likely confusion, incorrectly assessed the Florida Priory's defenses of prior use, and misinterpreted our decision in the first appeal when it denied the Sovereign Order's motion to supplement the record.  For the same reasons, the district court erred in considering the Sovereign Order's claims under state law.  Although we are concerned about the district judge's inappropriate comments throughout this litigation and his failures to adhere to our previous decision, we conclude that reassignment on remand is not warranted.

17

### A.  Lanham Act Infringement

The Sovereign Order's primary claims against the Florida Priory are for infringement under the Lanham Act.  A person is liable for infringement if he uses a mark in commerce that is confusingly similar to a registered mark.  *See* 15 U.S.C. § 1114(1)(a).  A plaintiff bringing an infringement action must prove "first, that its mark is valid and, second, that the defendant's use of the contested mark is likely to cause confusion."  *Dieter*, 880 F.2d at 326.  The second element—confusion— requires the district court to balance seven factors:

> (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

*Tana v. Dantanna's*, 611 F.3d 767, 774–75 (11th Cir. 2010).  The district court "does not have to consider all of these factors in every case and in some cases, 'new' factors may merit consideration."  *Swatch Watch, S.A. v. Taxor, Inc.*, 785 F.2d 956, 958 (11th Cir. 1986).  "The real question is whether the court's ultimate determination about the 'likelihood of confusion' was correct."  *Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1543 (11th Cir. 1985).

The Sovereign Order challenges the judgment for the Florida Priory on its claims of infringement.  With respect to all of its marks, the Sovereign Order

18

contests the application of several factors in the balancing test for likelihood of confusion. With respect to its incontestable marks, the Sovereign Order contends that the district court erred when it considered the Florida Priory's defenses of prior use.

The district court misapplied several factors when it assessed the likelihood of confusion, and it erred by treating the defenses of prior use in sections 1115(b)(5) and (b)(6) of the Lanham Act as defenses on the merits. We first discuss the application of the balancing test for confusion and then discuss the defenses of prior use.

### 1. Balancing Test

The Sovereign Order challenges all of the factors that the district court found in favor of the Florida Priory. That is, the Sovereign Order challenges the findings about the first factor with respect to its contestable marks, the second factor with respect to its design mark, and the fourth through seventh factors with respect to all of its marks. With regard to the seventh factor, the Sovereign Order also challenges the denial of its motion to supplement the record.

The district court erred with respect to the first, second, fourth, fifth, sixth, and seventh factors. It also erred by denying the Sovereign Order's motion to supplement the record. We address the seven factors, in turn, below.

19

a.  Strength of the Plaintiff's Marks

The first factor assesses the strength of the plaintiff's marks.  *See John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 973 (11th Cir. 1983).  "The stronger the mark, the greater the scope of protection accorded it, the weaker the mark, the less trademark protection it receives."  *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999).  We have described this factor as the "second most important factor" in the seven-factor balancing test for confusion.  *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 938 (11th Cir. 2010).

A factfinder assesses the strength of a mark in two ways.  It first classifies the mark as "generic, descriptive, suggestive, or arbitrary."  *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 648 (11th Cir. 2007).  Arbitrary marks are the strongest, and generic marks are the weakest.  *See Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1239 (11th Cir. 2008).  It then considers "the degree to which third parties make use of the mark."  *Frehling Enters.*, 192 F.3d at 1336.  "The less that third parties use the mark, the stronger it is, and the more protection it deserves."  *Id.*

The district court found that the strength of the mark favors the Sovereign Order with respect to the incontestable marks—the design mark, "Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes and of Malta," and

20

"Knights of Malta"—but favors the Florida Priory with respect to the contestable marks—"Hospitallers of St. John of Jerusalem" and "Order of St. John of Jerusalem." The Florida Priory challenges the former finding, and the Sovereign Order challenges the latter. We review both findings and conclude that the district court did not err in assessing the strength of the incontestable marks but erred in assessing the strength of the contestable marks.

### i.    *The Incontestable Marks*

The Florida Priory challenges the finding that the Sovereign Order's incontestable marks are presumptively strong. The Florida Priory disagrees with our decision in *Dieter*, which recognized this presumption, but concedes that Circuit law required the district court to apply it. The Florida Priory nevertheless contends that its defenses of prior use should defeat this presumption. The district court treated the Florida Priory's defenses as *complete* defenses on the merits—an error we discuss later in the opinion. But, setting that issue aside, the Florida Priory contends that its defenses of prior use at least rebut the *incontestable status* of the Sovereign Order's marks and the presumption that they are strong.

Although we largely agree with the Florida Priory's criticisms of *Dieter*, we conclude that the district court correctly treated the Sovereign Order's incontestable marks as presumptively strong. We also conclude that the Florida Priory's defenses of prior use do not rebut this presumption. Under the plain

21

language of the Lanham Act, those defenses are not relevant to the likelihood of confusion. They defeat only the conclusive presumption that incontestable marks are *valid*, not the presumption that incontestable marks are strong for purposes of confusion. Other statutory defenses may defeat the latter presumption, *see, e.g.*, 15 U.S.C. § 1065, but the Florida Priory did not raise them. To put the Florida Priory's arguments in context, we must first explore the role that incontestability plays under the Lanham Act.

Incontestability offers two key benefits for plaintiffs complaining about an infringement. With respect to the first element of infringement—validity—incontestability provides "*conclusive* evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." *Id.* § 1115(b) (emphasis added). Registration alone, by contrast, provides only "*prima facie* evidence of . . . validity." *Id.* § 1115(a) (emphasis added).

In this Circuit, incontestability also benefits plaintiffs with respect to the second element of infringement—confusion. We held in *Dieter* that incontestability gives plaintiffs an advantage with respect to the first factor in the seven-factor balancing test for likelihood of confusion. *See* 880 F.2d at 328–29; *see also Caliber Auto. Liquidators*, 605 F.3d at 939; *Frehling Enters.*, 192 F.3d at 1336. An incontestable mark is "presumed to be at least descriptive with

secondary meaning, and therefore a relatively strong mark." *Dieter*, 880 F.2d at 329.

On this point, our precedent in *Dieter* is an outlier.  The majority of circuits to consider the question have held that incontestability does not affect the strength of a mark for purposes of confusion.  *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 935 (4th Cir. 1995); *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 171 (5th Cir. 1986); *Munters Corp. v. Matsui Am., Inc.*, 909 F.2d 250, 252 (7th Cir. 1990); *Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988), *abrogated in part on other grounds by Eclipse Assocs. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114, 1116 n.1 (9th Cir. 1990); *Hornady Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 995, 1008 n.13 (10th Cir. 2014).  *But see Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 600 (6th Cir. 1991) (agreeing with our Circuit).  The Trademark Trial and Appeal Board agrees with the majority view.  *See Safer, Inc. v. OMS Invs., Inc.*, 94 U.S.P.Q.2d 1031, 1036 (T.T.A.B. 2010).  As do the leading treatises.  *See, e.g.*, 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 32:155 (4th ed.); Restatement (Third) of Unfair Competition § 21, reporter's note (1995).

The law in this Circuit is almost certainly incorrect.  The incontestability of a mark, by itself, says nothing about its strength.  A mark becomes incontestable when the owner uses it in commerce for five consecutive years and files an

23

affidavit with the Patent and Trademark Office attesting that the mark is not generic, not subject to a prior adverse judgment, and not currently subject to litigation. *See* 15 U.S.C. § 1065. Yet, "the test for likelihood of confusion is based on the perceptions of consumers in the marketplace, which are ordinarily unaffected by the status of a mark's registration." Restatement § 21, reporter's note. Furthermore, "trademark rights are not static and . . . the strength of a mark may change over time." *Safer*, 94 U.S.P.Q.2d at 1036. That a mark enjoyed incontestable status in the past says very little about its current strength in the marketplace. *See* 6 McCarthy § 32:155 (criticizing *Dieter* because "it focuses solely on the *inherent* distinctiveness of a mark and ignores the *acquired* distinctiveness and strength of the mark in the real world marketplace").

Moreover, the Lanham Act was amended after *Dieter* addressed the relationship between incontestability and confusion. The Trademark Law Revision Act of 1988 added the following proviso to section 1115 of the Lanham Act: "[The] conclusive evidence of the right to use [a] registered [incontestable] mark shall be *subject to proof of infringement* as defined in section [1114]." Pub. L. No. 100-667, § 128(b)(1), 102 Stat. 3935, 3945 (emphasis added). With this amendment, Congress decoupled the questions of incontestability and validity from the questions of infringement and confusion. *See Petro Shopping Ctrs. L.P. v. James River Petrol., Inc.*, 130 F.3d 88, 92 (4th Cir. 1997); *cf. KP Permanent*

*Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118, 125 S. Ct. 542, 548 (2004) ("Section 1115(b) places a burden of proving likelihood of confusion (that is, infringement) on the party charging infringement even when relying on an incontestable registration."). The *Dieter* Court had no occasion to consider this statutory change because the amendment became effective in November 1989, three months after *Dieter* was decided. *See* Pub. L. No. 100-667, § 136, 102 Stat. at 3948. But our later decisions followed *Dieter* without questioning its reasoning or acknowledging the change in statutory language. *See Caliber Auto. Liquidators*, 605 F.3d at 939; *Frehling Enters.*, 192 F.3d at 1336.

Nevertheless, "one panel of this Court cannot disregard the precedent set by a prior panel, even though it conceives error in the precedent." *United States v. Romeo*, 122 F.3d 941, 942 n.1 (11th Cir. 1997) (quoting *Davis v. Estelle*, 529 F.2d 437, 441 (5th Cir. 1976)). Although this principle gives way when "the prior panel's decision was based on legislation that ha[s] been changed," *United States v. Woodard*, 938 F.2d 1255, 1258 n.4 (11th Cir. 1991), our Court has followed *Dieter* even after the 1988 amendments to the Lanham Act, *see, e.g.*, *Caliber Auto. Liquidators*, 605 F.3d at 939. And it does not matter, for purposes of law of the Circuit, that our later decisions failed to consider the change in statutory language. *See DeYoung v. Owens*, 646 F.3d 1319, 1325 (11th Cir. 2011) ("[T]he mere act of proffering additional reasons not expressly considered previously will not open the

door to reconsideration of the question by a second panel." (quoting *Smith v. GTE Corp.*, 236 F.3d 1292, 1302 (11th Cir. 2001)). *Dieter* remains the law of the Circuit, and we must continue to follow it. Accordingly, the district court correctly determined that the Sovereign Order's incontestable marks are presumptively strong.

Accepting that incontestable marks are presumptively strong in this Circuit, the Florida Priory contends that its defenses of prior use should nevertheless defeat the presumption we recognized in *Dieter*. In the district court, the Florida Priory argued that it satisfied the criteria for the defenses in sections 1115(b)(5) and (b)(6) of the Lanham Act. Under section 1115(b)(5), a defendant must prove that "[its] mark . . . was adopted without knowledge of the [plaintiff's] prior use and has been continuously used by [the defendant] or those in privity with him from a date prior to [the plaintiff's registration]." 15 U.S.C. § 1115(b)(5). Under section 1115(b)(6), a defendant must prove that "[its] mark . . . was registered and used prior to the registration . . . or publication . . . of the registered mark of the [plaintiff], and not abandoned." *Id.* § 1115(b)(6). The Florida Priory's argument presents a question of first impression: do the statutory defenses in section 1115(b) of the Lanham Act defeat the presumption of strength we identified in *Dieter*?

Based on the text of the statute, we reject the Florida Priory's argument. According to the Lanham Act, the "defenses or defects" in section 1115(b) rebut

26

"[s]uch conclusive evidence of the right to use the registered mark." *Id.* § 1115(b).

In other words, they go to the first factor of infringement—validity.  The

presumption we recognized in *Dieter*, by contrast, goes to second element of

infringement—confusion.  We cannot treat the defenses in section 1115(b) as

defenses to the presumption we recognized in *Dieter* without overriding the plain

language of the Lanham Act.  Although *Dieter* itself is in conflict with the statute,

we decline to extend its error any further than necessary.

Of course, defendants can invoke other statutory defenses that would

potentially defeat the presumption from *Dieter*.  For example, section 1065 of the

Lanham Act—the provision that defines incontestability—also contains a defense

of prior use.  Under that defense, a defendant can challenge incontestability "to the

extent" that the plaintiff's registered mark "infringes a valid right acquired [by the

defendant] under the law of any State or Territory by use of a mark or trade name

continuing from a date prior to the date of registration . . . of such registered

mark." *Id.* § 1065.  This defense could be relevant to the *Dieter* presumption

because—unlike section 1115(b)—it defeats the "incontestable" status of a mark,

not the conclusive presumption of validity that comes with incontestability.

*Compare id.*, *with id.* § 1115(b).

But the Florida Priory never invoked any such defense.  The defense of prior

use in section 1065 turns on state law.  *See id.* § 1065; *accord Dorpan, S.L. v.*

27

*Hotel Melia, Inc.*, 728 F.3d 55, 63 & n.10 (1st Cir. 2013); *Watec Co. v. Liu*, 403

F.3d 645, 652 (9th Cir. 2005); *Advance Stores Co. v. Refinishing Specialties, Inc.*,

188 F.3d 408, 412–13 (6th Cir. 1999).  The Florida Priory has never explained how

it obtained rights to the Sovereign Order's marks under state law and satisfied the

other conditions in section 1065.  Any such defense is, therefore, forfeited.  *See*

*Maradiaga v. United States*, 679 F.3d 1286, 1294 (11th Cir. 2012).

In sum, the district court correctly determined that the Sovereign Order's

incontestable marks are presumptively strong.  Although this presumption is

legally dubious, it remains the binding law of the Circuit.  The Florida Priory's

defenses of prior use under sections 1115(b)(5) and (b)(6) do not defeat this

presumption because the Lanham Act expressly limits the effect of those defenses.

The Florida Priory failed to raise any other defense that could defeat the

presumption we recognized in *Dieter*.

## ii.    *The Contestable Marks*

The Sovereign Order challenges the finding that its contestable marks are

weak.  The district court stated that the marks are "generic" because they employ

"commonly used" words.  *SMOM III*, No. 09-81008-CIV, slip op. at 7.  It also

found that the marks are used extensively by third parties.  The Sovereign Order

contends that the district court erred by underestimating the uniqueness of its

marks.

28

We agree with the Sovereign Order that the district court erred in two respects. First, the strength of a mark does not turn on its component words in a vacuum, but instead "the *relationship* between the name and the service or good it describes." *Frehling Enters.*, 192 F.3d at 1335 (emphasis added). For example, "apple" is a common word, but it is a strong mark when used in connection with personal computers. *See* 2 McCarthy § 11:11. And "sun" is a common word, but it is a strong mark when used in connection with banking. *See Frehling Enters.*, 192 F.3d at 1335. The correct standard is whether the Sovereign Order's marks are strong when used in connection with the Sovereign Order's services. The district court erred by evaluating the uniqueness of the individual words that comprise the Sovereign Order's marks—*e.g.*, "hospitaller" and "Saint John"—instead of evaluating the relationship between the marks and the services that the Sovereign Order provides. Second, the district court misunderstood what matters when considering third-party use. With respect to licensees, their use does not weaken the Sovereign Order's marks. *See Univ. of Ga. Athletic Ass'n*, 756 F.2d at 1545 ("[W]idespread use of a mark by licensees would tend to support, rather than rebut, the proposition that [the] mark is a strong one."). And, with respect to foreign groups using the Sovereign Order's marks in other countries, their use is irrelevant to the strength of the marks in the United States. *See E. Remy Martin & Co. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1531, 1533 (11th Cir. 1985). As for

29

the remaining examples, "the significance of third-party use" depends on "the *entire* name a third party uses." *Safeway Stores*, *Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1165 (11th Cir. 1982) (emphasis added). That other organizations use *parts* of the Sovereign Order's word marks is not persuasive evidence of third-party use. *See id.* Moreover, the district court identified only twenty examples of third-party use—a number "substantially less than in other cases in which we have found significant third-party use." *Id.*

### b. Similarity of the Parties' Marks

The second factor for confusion—the similarity of marks—requires the factfinder to compare the plaintiff's marks with the defendant's marks and measure their similarity. "[T]he greater the similarity . . . , the greater the likelihood of confusion." *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 505 (5th Cir. 1980). Similarity must be determined "by considering the overall impression created by the mark as a whole rather than simply comparing individual features of the marks." *Id.* Relevant points of comparison include "the appearance, sound and meaning of the marks, as well as the manner in which the marks are used." *John H. Harland*, 711 F.2d at 975.

Neither party challenges the finding of the district court that the similarity of the word marks favors the Sovereign Order, but the Sovereign Order challenges the finding that the design marks are dissimilar. It argues that the parties' design

30

marks are strikingly similar.  It highlights the common design elements—a shield

and a Maltese cross—that are featured in both marks and the overall impression

that the marks convey.

We conclude that the truth is somewhere in the middle: the district court did

not clearly err by finding this factor favors the Florida Priory, but it clearly erred to

the extent it attributed significant weight to this factor.  *See Frehling Enters.*, 192

F.3d at 1338.  The parties' design marks are similar:

 

Both marks feature a shield and a Maltese cross.  Both marks invoke impressions

of Malta, Christianity, and the military, and they are used in the same way—as the

symbol for a religious charitable organization.  *See AmBrit, Inc. v. Kraft, Inc.*, 812

F.2d 1531, 1541 (11th Cir. 1986) (finding confusing similarity in trade dress when,

"[a]lthough a close examination of the two wrappers reveals significant

differences," "each is the same size, each has a textured silver foil background,

each is printed primarily with blue and white inks, each includes the product name

in large block letters and the company name in smaller script, and each features a

31

polar bear"); *Exxon Corp.*, 628 F.2d at 505 (finding confusing similarity between two marks that were used similarly and were both "printed in red with all block letters on a white background" with blue underneath); *John H. Harland*, 711 F.2d at 976 ("Although the similarities in appearance, sound and meaning between the marks . . . are far from overwhelming, these similarities are accentuated by the manner in which the marks are used."). The overall designs of the marks are different, however, and they are visually distinguishable. Because there are "both similarities and differences," we "cannot say flatly that either the marks are or are not visually similar." 4 McCarthy § 23:25. Instead, we conclude that this factor does not meaningfully tip the scales one way or the other. *See John H. Harland*, 711 F.2d at 976; *see also In re Coors Brewing Co.*, 343 F.3d 1340, 1344 (Fed. Cir. 2003) ("Although we uphold the . . . finding that the two marks are generally similar, . . . we note that similarity is not a binary factor but is a matter of degree. Because there are significant differences in the design of the two marks, the finding of similarity is a less important factor . . . .").

### c.  Similarity of Services

Neither party challenges the finding of the district court that this factor favors the Sovereign Order.

d–e.  Similarity of Sales and Advertising Methods

The fourth factor—similarity of the parties' sales methods—and the fifth factor—similarity of the parties' advertising methods—merge in this case.  The former focuses on "where, how, and [with] whom" the parties do business. *Frehling Enters.*, 192 F.3d at 1339.  "Dissimilarities between the retail outlets for and the predominant consumers of plaintiff's and defendants' goods lessen the possibility of confusion . . . ."  *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir. 1980).  The latter compares the parties' advertisements and the audiences they reach.  *See AmBrit*, 812 F.2d at 1542; *Amstar Corp.*, 615 F.2d at 262.  "The greater the similarity . . . , the greater the likelihood of confusion." *Exxon Corp.*, 628 F.2d at 506.  The Sovereign Order and the Florida Priory identify their "customers" as their donors, not the recipients of their charitable services.  Accordingly, both their "sales" and their "advertising" methods are their fundraising methods.

The Sovereign Order contests the finding that these two factors favor the Florida Priory.  The district court found that, unlike the Florida Priory, the Sovereign Order obtains funding from Catholic organizations and the federal government.  The Sovereign Order does not disagree with this finding, but it argues that the district court applied an overly stringent standard in assessing the similarity of the parties' potential donors.

33

We again agree that the district court erred.  By its own findings, the fundraising methods and target donors of the Sovereign Order and the Florida Priory overlap significantly.  The district court found that both parties use "print publications, the Internet and email to reach donors."  *SMOM III*, No. 09-81008-CIV, slip op. at 11.  More importantly, it found that the parties accept donations from individuals "notwithstanding [their] relationship, if any, with the Catholic Church."  *Id.*  Although the district court found differences between the parties' fundraising methods, it labeled those differences as "minor."  *Id.*  Our cases do not require an "[i]dentity" of sales or advertising methods; "the standard is whether there is likely to be significant enough overlap . . . that a possibility of confusion could result."  *Frehling Enters.*, 192 F.3d at 1340; *see also Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1185 n.7 (11th Cir. 1985) ("It would overburden a plaintiff to ask that he or she prove through direct evidence that a large number of customers actually use the services of both parties: hence, it should be enough to show that the same customers are likely to use both services.").  The parties here use many of the same fundraising methods and "cater to the same general kinds of individuals," "even if the particular individuals [sending donations] differ."  *Safeway Stores*, 675 F.2d at 1166.

f. Defendant's Intent

The sixth factor asks whether the defendant adopted its mark "with the intent of deriving benefit from the reputation of the plaintiff." *Exxon Corp.*, 628 F.2d at 506. "Bad faith in the adoption and use of a trademark normally involves . . . efforts by a party to 'pass off' its product as that of another." *Amstar Corp.*, 615 F.2d at 263. Intent can be proven with direct or circumstantial evidence. *See Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 843 (11th Cir. 1983). When intent is present, it can "justify the inference that there is confusing similarity." *Frehling Enters.*, 192 F.3d at 1340. But "it is neither a necessary nor sufficient condition for determining the ultimate legal fact of the 'likelihood of confusion.'" *Jellibeans*, 716 F.2d at 843 n.23.

The Sovereign Order challenges the finding that the Florida Priory did not adopt its marks with the intent to benefit from the Sovereign Order's reputation. It contends that the district court impermissibly relied on Papanicolaou's testimony when it found that the Ecumenical Order used the marks prior to the Sovereign Order. We agree.

The district court erred. In our earlier decision, we held that the district court erroneously "permitted Papanicolaou, a lay witness, to testify about historical matters." *SMOM II*, 702 F.3d at 1295. Papanicolaou was never qualified as an expert witness and could not testify about matters beyond his personal knowledge.

35

On remand, the district court relied on Papanicolaou's testimony to explain the relationship between several documents from the early twentieth century, including minutes from a meeting in 1908, incorporation documents from 1911 and 1956, and registration documents from 1958. Papanicolaou was not present when these documents were created, and he has no more personal knowledge about the events they describe than he had about "late-eighteenth-to-early-nineteenth century history." *Id.* at 1294. Moreover, the documents, on their face, do not prove that the Florida Priory has used the marks in question since 1911. The documents say nothing about the relationship between the Ecumenical Order and the Delaware or New Jersey organizations. Indeed, the district court cited Papanicolaou's testimony, not the documents, because only his testimony described a relationship between the Ecumenical Order and the Delaware and New Jersey organizations.

Granted, the district court also relied on testimony about matters within Papanicolaou's personal knowledge, but that testimony does not render its other error harmless. Specifically, the district court credited Papanicolaou's testimony that, in 2002, he added "Ecumenical Order" to the name of his organization to avoid the accusation that his organization was taking advantage of the Sovereign Order's reputation. The *primary* basis for its finding of no intent, however, was its finding of prior use—a finding that was based on Papanicolaou's *in*admissible testimony. *See SMOM III*, No. 09-81008-CIV, slip op. at 12. Accordingly, we

36

cannot say that the district court "was not 'substantially swayed' by Papanicolaou's inadmissible testimony" when it found that this factor favors the Florida Priory. *SMOM II*, 702 F.3d at 1295 (quoting *Aetna Cas. & Sur. Co. v. Gosdin*, 803 F.2d 1153, 1160 (11th Cir. 1986)).

### g.  Evidence of Actual Confusion

The "best evidence" that the parties' marks are likely to be confused is evidence that the marks actually have been confused. *Amstar Corp.*, 615 F.2d at 263.  Evidence of actual confusion is "not necessary" for the plaintiff to prevail on a claim of infringement, *id.*, but even a "very little" amount of it is highly probative, *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971).  The strength of such evidence depends on "the number of instances of confusion," "the kinds of persons confused," and the "degree of confusion." *Safeway Stores*, 675 F.2d at 1167.

The Sovereign Order makes three arguments to challenge the finding of the district court that no actual confusion exists.  First, it challenges the treatment of the email from Gail Quigley that it introduced at trial.  Second, it contends that the district court erred by relying on representations that the Sovereign Order made to the Patent and Trademark Office in 2002.  Third, it challenges the denial of its motion to supplement the record with evidence of actual confusion that surfaced after the bench trial in 2011.

We agree with the Sovereign Order with respect to its last two arguments. We disagree that the district court clearly erred by discounting the email from Quigley. But the district court erred by considering the representations that the Sovereign Order made in 2002 and by denying the Sovereign Order's motion to supplement based on its misreading of our previous decision on appeal.

i.    *The District Court Did Not Clearly Err in Weighing the Quigley Email.*

The district court did not clearly err when it considered Quigley's email. The district court discounted Quigley's supposed confusion because she is not a donor to either the Sovereign Order or the Florida Priory. We have held that "confusion of individuals casually acquainted with a business is worthy of little weight." *Id.* The district court was entitled to discount Quigley's confusion. *See Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 319 (5th Cir. July 1981) (discounting an inquiry about whether Sun Banks and Sun Federal were related because "there is no indication that the inquiry was made by a potential customer concerning the transaction of business"). Moreover, although Quigley wrote, "I'm confused about [the Florida Priory] and your Order of Malta," the district court found that the remainder of her email suggests she understood the difference between the Sovereign Order and the Florida Priory. Because the district court articulated one of "two permissible views of the evidence," we defer to its reading. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S. Ct.

38

1504, 1511 (1985).  At most, Quigley's email raises "an inference of actual confusion . . . [that] is not sufficiently dispositive so as to favor either side in an appreciable fashion."  *Frehling Enters.*, 192 F.3d at 1341.

ii.    *The District Court Erred by Considering the Representations that the Sovereign Order Made to the Patent and Trademark Office in 2002.*

The district court erred when it treated the representations that the Sovereign Order made to the Patent and Trademark Office in 2002 as relevant evidence. According to the district court, the Sovereign Order conceded that its marks are not likely to be confused with the Florida Priory's marks by registering its marks despite the Delaware organization's prior use.  Its reasoning largely rehashes its earlier finding that the Sovereign Order defrauded the Patent and Trademark Office—a finding we reversed in the first appeal.  As we explained, the Patent and Trademark Office notified the Sovereign Order about the preexisting mark at the time of registration.  But the Sovereign Order successfully distinguished its marks by explaining that they are *service* marks, as opposed to the Delaware organization's *collective membership* marks.  *See SMOM II*, 702 F.3d at 1292 n.14. In this litigation, the Sovereign Order sues the Florida Priory for its use of allegedly infringing *service* marks.  The Sovereign Order's attestations in 2002 about the Delaware organization's collective membership marks are irrelevant.

iii.    *The District Court Erred in Denying the Sovereign Order's Motion to Supplement the Record.*

Finally, the district court erred when it denied the Sovereign Order's motion to supplement the record.  The district court denied the motion for one reason: it thought we had "instructed" it to evaluate confusion "based on the evidence presented *at trial*."  *SMOM III*, No. 09-81008-CIV, slip op. at 14 n.1 (emphasis added).  We gave no such instruction.  In our earlier decision, we held that the district court should "limit its analysis to facts in the record and . . . refrain from consulting outside sources on the Internet that have not been cited, submitted, or recognized by the parties."  *SMOM II*, 702 F.3d at 1296.  But this instruction to rely on the record created by the parties and to refrain from conducting self-directed Internet research did not address whether the district court should permit the parties to supplement the record with post-trial evidence.

Although we review the denial of a motion to supplement the record for abuse of discretion, *Elston*, 997 F.2d at 1405, the district court never actually *exercised* its discretion because it misinterpreted our earlier decision.  Accordingly, we cannot defer to its decision.  *See Renico v. Lett*, 559 U.S. 766, 775, 130 S. Ct. 1855, 1863 (2010) ("[I]f the record reveals that the trial judge has failed to exercise the 'sound discretion' entrusted to him, the reason for such deference by an appellate court disappears." (quoting *Arizona v. Washington*, 434 U.S. 497, 510 n.28, 98 S. Ct. 824, 832 (1978))); *Lykins v. Pointer, Inc.*, 725 F.2d 645, 649 (11th

40

Cir. 1984) ("The court . . . must in fact exercise its discretion."). On remand, the district court should determine in the first instance whether and how the parties can supplement the record with post-trial evidence. *See generally Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997) ("[D]istrict courts enjoy broad discretion in deciding how best to manage the cases before them.").

### 2. Prior-Use Defenses

The Sovereign Order challenges the holding that its incontestable marks were not infringed on account of the Florida Priory's prior use. The Sovereign Order contends that the district court erroneously treated the defenses of prior use in sections 1115(b)(5) and (b)(6) as complete defenses on the merits. It also argues that prior use was outside the scope of our appellate mandate and that the district court erred by relying on Papanicolaou's testimony to support its finding of prior use.

The district court misinterpreted sections 1115(b)(5) and (b)(6) as providing complete defenses on the merits. The defenses in section 1115(b) rebut the conclusive presumption of validity that comes with incontestability. *See* 15 U.S.C. § 1115(b). When that presumption is rebutted, however, the defendant does not automatically prevail. Rebuttal reduces the conclusive presumption of validity to a prima facie presumption of validity. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 199 n.6, 105 S. Ct. 658, 664 (1985) ("If one of the defenses [in

41

section 1115(b)] is established, registration constitutes only prima facie and not conclusive evidence of the owner's right to exclusive use of the mark."). The defendant must still identify some additional reason why the plaintiff's marks are invalid. *See* 15 U.S.C. § 1115(a). Here, whether or not sections 1115(b)(5) and (b)(6) apply, the Sovereign Order's marks are presumptively valid because they are registered. *See id.* The district court erred by treating sections 1115(b)(5) and (b)(6) as complete defenses to infringement. *See* 6 McCarthy § 32:153; *see also id.* at § 32:157 (treating the defenses in section 1115(b) as defenses on the merits leads to the "absurdity of a challenger finding it easier to prove a defense to an incontestable registration than to an unregistered, common-law mark").

Of course, prior use *can* be a defense on the merits, but we agree with the Sovereign Order that any such defense would go beyond our mandate. Under the common law, prior use can defeat the validity of a plaintiff's mark. *See generally United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 39 S. Ct. 48 (1918); *Hanover Star Milling Co. v. Metcalf* (*Tea Rose*), 240 U.S. 403, 36 S. Ct. 357 (1916). In the first appeal, however, we remanded for the district court "to consider, under the correct legal standard, *confusion* with respect to all of [the Sovereign] Order's marks." *SMOM II*, 702 F.3d at 1298 (emphasis added). Under the "mandate rule," a district court can only "settle so much as has been remanded." *Litman v. Mass. Mut. Life Ins. Co.*, 825 F.2d 1506, 1511 (11th Cir.

42

1987) (en banc) (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255, 16 S. Ct. 291, 293 (1895) (internal quotation mark omitted)).  Because our earlier decision remanded for the district court to consider the second element of infringement—confusion—it could not consider challenges to the first element—validity.  *See Barber v. Int'l Bhd. of Boilermakers*, 841 F.2d 1067, 1070–71 (11th Cir. 1988).  Prior use was relevant only insofar as it informed the likelihood of confusion.  As explained earlier, the defenses of prior use in sections 1115(b)(5) and (b)(6) do not do so.

Furthermore, the district court erred by grounding its finding of prior use in the inadmissible testimony of Papanicolaou.  The district court based its finding of prior use on the same evidence that it cited for its finding of no intent—*i.e.*, Papanicolaou's testimony about the twentieth century documents.  As we have explained, that finding was unsupported because Papanicolaou was not qualified to testify about matters beyond his personal knowledge.  Accordingly, even if prior use had been within the scope of our mandate, the district court could not have relied on Papanicolaou's testimony to find that the Florida Priory has continuously used the marks in question "since 1911."  *SMOM III*, No. 09-81008-CIV, slip op. at 15.

In short, the district court erred when it held that the Florida Priory's defenses of prior use defeat the Sovereign Order's claims of infringement for its

43

incontestable marks.  The defenses in sections 1115(b)(5) and (b)(6) of the Lanham Act are not complete defenses on the merits.  Those defenses, when they apply, only lower the presumption of validity afforded to incontestable marks.  The Florida Priory no longer challenges the validity of the Sovereign Order's marks, and any such challenge would be outside the scope of our appellate mandate.  Even if it were relevant at this stage, the finding of prior use by the district court was unsupported because it was based on Papanicolaou's inadmissible testimony.

### 3.  Conclusion

We conclude that the district court erred when it entered judgment for the Florida Priory on the Sovereign Order's claims of infringement.  The district court erred with respect to every factor challenged by the Sovereign Order.  Specifically, the district court clearly erred in attributing significant weight to its finding that the similarity of the design marks favors the Florida Priory.  And it committed legal errors when it assessed the strength of the Sovereign Order's contestable word marks, the similarity of sales and advertising methods, the presence of intent, and the evidence of actual confusion.  It also erred with respect to prior use because sections 1115(b)(5) and (b)(6) are neither defenses on the merits nor defenses to the presumption that the Sovereign Order's incontestable marks are strong.

Due to these errors, we reverse the judgment against the Sovereign Order on its claims of infringement under the Lanham Act.  On remand, the district court

should reconsider the strength of the Sovereign Order's contestable marks, the similarity of the parties' sales methods and advertising methods, the Florida Priory's intent, and the evidence of actual confusion. It should also decide whether or how to supplement the record. Then, the district court should reweigh the balance of factors and make a finding as to whether the Florida Priory's marks are likely to be confused with the Sovereign Order's marks.

## B.  State-Law Claims

The parties agree that the Sovereign Order's claims under Florida law rise and fall with its claims of infringement under the Lanham Act. *See SMOM II*, 702 F.3d at 1296 (citing *Nat. Answers, Inc. v. Smithkline Beecham Corp.*, 529 F.3d 1325, 1333 (11th Cir. 2008)). Because we vacate the judgment on the claims of infringement, we must also vacate the judgment on the claims under state law and remand for further proceedings.

## C.  Reassignment

Renewing its request from the first appeal, the Sovereign Order again asks us to reassign the case on remand to a different district judge. The Sovereign Order cites the district judge's continued reliance on Papanicolaou's inadmissible testimony, his continued reliance on the rejected finding of fraud, and his negative comments about the parties and their motives. The Florida Priory, for its part, downplays the district judge's rulings and comments and relies on our earlier

refusal to reassign the case.  Although we acknowledge the force of the Sovereign

Order's arguments, we agree with the Florida Priory that reassignment is not

warranted.

We can order reassignment "as part of our supervisory authority over the

district courts in this Circuit."  *United States v. Torkington*, 874 F.2d 1441, 1446

(11th Cir. 1989); *see* 28 U.S.C. § 2106 ("[A] court of appellate jurisdiction . . . may

remand the cause and . . . require such further proceedings to be had as may be just

under the circumstances.").  In the absence of actual bias, we consider at least three

factors in determining whether to reassign a case: "(1) whether the original judge

would have difficulty putting his previous views and findings aside; (2) whether

reassignment is appropriate to preserve the appearance of justice; (3) whether

reassignment would entail waste and duplication out of proportion to gains realized

from reassignment."  *Torkington*, 874 F.2d at 1447.  Reassignment can become

warranted on the second or third appeal, even though it was not warranted on the

first or second appeal.  *See Shaygan*, 652 F.3d at 1318–19 (citing *United States v.*

*Martin*, 455 F.3d 1227, 1242 (11th Cir.2006); *United States v. Gupta*, 572 F.3d

878, 892 (11th Cir. 2009)).

The balance of the three factors identified in *Torkington* counsels against

reassignment, although the balance is closer than it was on the first appeal.  First,

we agree with the Sovereign Order that the district judge's adherence to his

previous finding of fraud and his continued reliance on Papanicolaou's historical testimony suggest he may have "difficulty putting his previous views and findings aside." *Torkington*, 874 F.2d at 1447. Nevertheless, his most recent missteps seem more akin to garden-variety errors of law than the kind of direct defiance or "stalemated posture" that requires reassignment. *Brooks v. Cent. Bank of Birmingham*, 717 F.2d 1340, 1343 (11th Cir. 1983); *cf., e.g.*, *United States v. Remillong*, 55 F.3d 572, 577 (11th Cir. 1995) (reassigning a case when the district judge "stubbornly persisted in his questioned decision without reasonable explanation or justification"); *United States v. White*, 846 F.2d 678, 696 (11th Cir. 1988) (reassigning the case because the district judge "entered a holding that had been explicitly reversed by this Court previously"). The district court could have read our earlier decision—mistakenly, but reasonably—as not totally foreclosing his reliance on Papanicolaou's testimony or his previous finding of fraud because we addressed those issues in the context of different legal claims. Second, we also agree with the Sovereign Order that the district judge's repeated impugning of the parties' motives in written opinions and public hearings is cause for concern. The same is true for his expressed disinterest in trademark disputes in general and this case in particular. *Cf. Torkington*, 874 F.2d at 1447 (reassigning a case in which "the judge stated at various times that he felt the taxpayer had little interest in this type of suit, that this prosecution was 'silly,' and that it was a waste of the

47

taxpayers' money" and "questioned the wisdom of the substantive law he had to apply"). But the district judge's latest remarks, like his earlier ones, "do not rise to the level of conduct that warrants assignment to a different judge on remand." *SMOM II*, 702 F.3d at 1297. And we see no evidence that his remarks played any role in his ultimate decision. Third, we are still convinced that reassignment will "entail waste and duplication out of proportion to [the] gains." *Id.* (quoting *Torkington*, 874 F.2d at 1447). This district judge has a unique familiarity with this complex, "fact-intensive" case. *Id.* He conducted the trial, heard the witnesses, and is familiar with the record and the parties. Reassignment would "require duplication of resources expended by the parties and the court" and would offset any corresponding gains. *Id.*; *see, e.g.*, *CSX Transp., Inc. v. State Bd. of Equalization*, 521 F.3d 1300, 1301 (11th Cir. 2008) (denying reassignment when "[t]he judge presided over an eight-day trial that concerned a complicated subject and drafted a thorough 27-page opinion"); *Stargel v. SunTrust Banks, Inc.*, 791 F.3d 1309, 1312 (11th Cir. 2015) (denying reassignment when "the district judge ha[d] been assigned to [the] case for over four years and . . . expended significant effort on the not-so-simple issues"). Accordingly, we conclude that reassignment is not warranted at this time.

"Reassignment is an extraordinary order, and we 'do not order [it] lightly.'" *Gupta*, 572 F.3d at 891 (alteration in original) (quoting *Torkington*, 874 F.2d at

1447); *see also Shaygan*, 652 F.3d at 1318.  We again express our expectation that, "on remand, both parties will be treated with the respect they deserve and that the district court will be able to freshly consider the remanded claims notwithstanding its previously expressed views."  *SMOM II*, 702 F.3d at 1297.

## IV.  CONCLUSION

We **VACATE** the judgment against the Sovereign Order's claims of infringement under the Lanham Act, **VACATE** the judgment against the Sovereign Order's claims under Florida law, and **REMAND** for proceedings consistent with this opinion.